ALFRED PINE, PLAINTIFF-RESPONDENT, v. ELI LILLY & COM-
PANY, WINTHROP LABORATORIES AND WINTHROP PROD-
UCTS CO., ABBOTT LABORATORIES, MERCK, SHARP &
DOHME, THE UPJOHN COMPANY, BLUE LINE CHEMICAL
CO., AMERICAN PHARMACEUTICAL CO., INC., AND E.R.
SQUIBB & SONS, INC., DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued April 3, 1985—Decided May 14, 1985.

Before Judges MATTHEWS, FURMAN and HAVEY.

*John L. McGoldrick* argued the cause for appellant Eli Lilly & Company (*McCarter & English*, attorneys; *John L. McGoldrick* of counsel; *John F. Brenner* and *Keith E. Lynott* on the brief).

*Marc S. Klein* argued the cause for appellant E.R. Squibb & Sons, Inc. (*Sills, Beck, Cummis, Zuckerman, Radin & Tischman*, attorneys; *Barry M. Epstein* of counsel; *Marc S. Klein* on the brief).

Attorneys for all other appellants joined in the briefs filed by appellants Eli Lilly & Company and E.R. Squibb & Sons, Inc.

*Jean W. Billings* argued the cause for respondent (*Carney & Wilson*, attorneys; *James F. Carney* of counsel and on the brief with *Jean W. Billings* ).

The opinion of the court was delivered by

HAVEY, J.A.D.

The question raised by this appeal, on leave granted,[1] is whether New Jersey, as the forum State, should apply its statute of limitations and "discovery rule" to a tort action when the underlying wrongful act occurred in the state of New York, while plaintiff was a New York domiciliary, but who, after the New York statute of limitations had run, established a New Jersey domicile and thereafter instituted this suit.

On appeal, defendant drug companies challenge the trial court's application of our statute of limitations and "discovery rule" and consequent denial of their motions for summary judgment, arguing that the trial court should have "borrowed" New York's limitations statute which would have time-barred plaintiff's action, since the "discovery rule" is not recognized in that state.

We affirm the trial court's denial of summary judgment. Accepting the legitimacy of plaintiff's assertion that he was a New Jersey domiciliary when this action was instituted, we hold that New Jersey has a sufficient state governmental interest in the compensation of its domiciliaries to apply its statute of limitations and "discovery rule." We conclude that the threshold question of plaintiff's domicile must be addressed and, accordingly, remand for that purpose.

The record before the trial court on the summary judgment motion disclosed the following facts which were accepted as true. Because of episodes of bleeding during her early pregnancy with plaintiff, plaintiff's mother was hospitalized in April 1953 and was administered the drug Diethylstilbestrol (DES). Thereafter, from time to time during her pregnancy, she ingested the drug prescribed to her by her treating physician.

---

[1]Each defendant moved for leave to appeal after the denial of their respective motions for summary judgment. After we granted leave to each defendant, the appeals were consolidated by our order dated January 27, 1984.

Plaintiff was born in September 1953 in Brooklyn, New York, and remained a Brooklyn resident while receiving his elementary and secondary education in New York City schools. He earned a degree from Vassar College in New York and a law degree from Boston College Law School. He thereafter returned to Brooklyn, resided with his mother, and commenced practicing law in Manhattan.

On August 27, 1979, after a physical examination four days earlier, plaintiff was admitted to Columbia Presbyterian Hospital and underwent surgery for testicular cancer, resulting in the removal of his right testicle. Plaintiff claims that during his hospitalization, treating physicians advised him that his condition was related to *in utero* exposure to DES. Upon release from the hospital, plaintiff returned home to Brooklyn and resumed his law practice in Manhattan on a limited basis in December 1979.

In March 1980, plaintiff consulted a New York law firm concerning the possibility of bringing a law suit in connection with his medical condition, and in the fall of 1980, consulted a New Jersey attorney. In December 1980, he moved to Jersey City to a multi-family apartment as a month-to-month tenant and, on July 23, 1981 filed this action against defendants, eight pharmaceutical companies [2] doing business in New Jersey, which marketed DES in 1953. Plaintiff's complaint sounds in negligence, strict liability and breach of warranty, the gravamen of which is that his *in utero* exposure to the drug was a proximate producing cause of his testicular cancer. He seeks compensatory and punitive damages.

All parties acknowledge that plaintiff's action is time-barred under New York law. The New York statute of limitations prescribes a three-year period from the date of accrual for the

---

[2]Plaintiff named 82 pharmaceutical companies as defendants in his complaint, representing all of the drug companies which manufactured, sold or distributed DES during 1953. All but the 8 defendants who have joined in the summary judgment motion remain unserved.

commencement of a personal injury action, which is tolled until the injured party reaches the age of 18. N.Y.C.P.L.R. §§ 208, 214 (McKinney 1984). New York has no discovery rule. *See Manno v. Levi*, 94 *A.D.*2d 556, 465 *N.Y.S.*2d 219 (1983), aff'd 62 *N.Y.*2d 888, 467 *N.E.*2d 517, 478 *N.Y.S.*2d 853 (1984). Accepting as true plaintiff's factual assertion that he was advised for the first time while hospitalized in August 1979 that his testicular cancer was associated with *in utero* exposure to DES, plaintiff has made a prima facie showing of the application of New Jersey's discovery rule and thus his action would be timely if the New Jersey two-year limitations statute applies, since the statute would not have begun to run until that date. *See Lopez v. Swyer*, 62 *N.J.* 267 (1973); *Lynch v. Rubacky*, 85 *N.J.* 65 (1981); *Burd v. New Jersey Telephone Company*, 76 *N.J.* 284 (1978).

In denying summary judgment, the trial court, for the purposes of defendants' motions, properly accepted plaintiff's assertion as to the legitimacy of his New Jersey domicile. *Judson v. Peoples Bank & Trust Co. of Westfield*, 17 *N.J.* 67, 74–75 (1954). Relying upon our Supreme Court's holding in *Heavner v. Uniroyal, Inc.*, 63 *N.J.* 130 (1973), it found that New Jersey's overriding and predominant governmental interest in compensating domiciliaries for injuries caused by the tortious conduct of others was alone sufficient to apply our statute of limitations and liberal "discovery rule." We agree.

Defendants argue that absence of "factual contacts" between New Jersey and the controversy, as well as our significant policy against forum shopping as expressed in *Heavner*, compels the "borrowing" of New York's statute of limitations, since plaintiff established a New Jersey domicile only after he had discovered that his potential claim against defendants was time-barred under New York law.

In *Heavner*, the court discarded the rigid common law rule that the limitations law of this State must be employed in every suit on a foreign cause of action, 63 *N.J.* at 140–141, holding that:

> [W]hen the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will "borrow" the limitations law of the foreign state. We presently restrict our conclusion to the factual pattern identical with or akin to that in the case before us, for there may well be situations involving significant interests of this state where it would be inequitable or unjust to apply the concept we here espouse. [63 *N.J.* at 141].

The operative facts in *Heavner* were that a husband and wife sued on personal injury claims arising out of injuries sustained when their truck tire blew out causing the truck to strike an abutment in the state of North Carolina. Plaintiffs were, at the time of the accident and institution of their suit, North Carolina residents. They purchased the tire in North Carolina from Uniroyal, a New Jersey corporation.

The methodology by which the court in *Heavner* concluded that New Jersey was a disinterested forum is not laid out. The court did not, for example, place particular emphasis on any one of the five expressed criteria, nor did it state what "substantial interest in the matter" New Jersey might have that would dictate application of our statute. The thrust of the court's holding was that, from the narrow fact pattern before it, New Jersey had insufficient factual contacts with both the controversy and parties to apply New Jersey law. 63 *N.J.* at 134–135 n. 3.

■ We glean from *Heavner* that the underlying analysis of whether New Jersey should apply its limitations statute or that of the foreign state is essentially akin to the "governmental interest" test in resolving choice of substantive law issues. *See Henry v. Richardson-Merrell, Inc.,* 508 *F.*2d 28, 32–33 (3d Cir.1975); *Allen v. Volkswagen of America, Inc.,* 555 *F.*2d 361, 362 (3d Cir.1977); *accord Scoles and Hay, Conflict of Laws* §§ 3.11, 3.12 (1982). This approach requires a two-step analysis in resolving the choice of law issue: a determination first of the governmental policies, as expressed by the laws of each related jurisdiction, and second of the factual contacts the controversy

and parties have with each related jurisdiction. *See Deemer v. Silk City Textile Mach. Co.*, 193 *N.J.Super.* 643, 649 (App.Div. 1984). *See also Restatement (Second) of Conflicts of Law* §§ 6, 145, 146 (1971).

This analysis does not count up the factual contacts with the respective states, as defendants would have us do, and make a quantitative determination of which state law should apply. Instead, "the qualitative nature of contacts is considered so that only contacts which are likely to promote valid state policies are considered relevant." *Henry v. Richardson-Merrell, Inc., supra*, 508 *F.*2d at 32; *see also Mullane v. Stavola*, 101 *N.J.Super.* 184, 188–189 (Law Div.1968).

New Jersey has a clearly recognized governmental interest in the compensation of its domiciliaries, first expressed in *Mellk v. Sarahson*, 49 *N.J.* 226 (1967). In *Mellk*, plaintiff passenger and defendant driver, both New Jersey residents, were involved in a one-car accident in the state of Ohio. Our Supreme Court declined to apply the Ohio guest statute which would have barred recovery. Rather, the court applied New Jersey's ordinary care standard permitting a guest to recover against his host on evidence of ordinary negligence, concluding that New Jersey's strongly declared policy favoring compensation of its domiciliaries for the tortious conduct of others regardless of where that conduct occurs prevailed over Ohio's policy of preventing collusive suits. *Id.* at 230–231. That "compensation" policy reflects the underlying governmental interest that the injured domiciliary "not become a charge on its society and that he be restored, if possible, to productivity." *Schum v. Bailey*, 578 *F.*2d 493, 501 (3d Cir.1978) (Gibbons, J., concurring).

A second governmental interest, one of deterrence, is expressed in *Pfau v. Trent Aluminum Co.*, 55 *N.J.* 511 (1970). That policy is based on the assumption that exacting compensation from a wrongdoer will deter his future misconduct, and is ordinarily associated "with the sovereignty in which past misconduct took place and in which future misconduct may occur." *Schum v. Bailey, supra*, 578 *F.*2d at 501.

We considered both governmental interests in *Deemer v. Silk City Textile Mach. Co., supra,* 193 *N.J.Super.* 643, a wrongful death action in which plaintiff's decedent was a North Carolina resident, where he suffered a crush-type injury while performing maintenance work on a batcher both designed and manufactured by defendant Silk City in New Jersey. We declined to apply New Jersey law, concluding that North Carolina's interest in compensating its domiciliary outweighed New Jersey's "deterrence" interest relating to the defect-free design and manufacture of a product, and that New Jersey's contacts with the dispute and parties were insufficient to render New Jersey's interest in the matter paramount. *Id.* at 651–652.

We have little doubt that application of the "factual contacts" prong of the governmental interest test alone would require the "borrowing" of New York's limitations statute, thus barring plaintiff's claim. We are, however, completely in agreement with the trial court that New Jersey's interest in compensating its domiciliaries is paramount, that it outweighs our policy of discouraging forum shopping, and thus here tips the scales in favor of applying the New Jersey statute and "discovery rule."

In most instances, our courts, as well as the Third Circuit, have favored applying New Jersey law in tort actions when the plaintiff is domiciled in New Jersey. *See Mellk v. Sarahson, supra,* 49 *N.J.* at 226; *Mullane v. Stavola, supra,* 101 *N.J.Super.* at 187–188; *Rose v. Port of New York Authority,* 61 *N.J.* 129, 140 (1972); *Schum v. Bailey, supra,* 578 *F.*2d at 502–503. If compensation of New Jersey domiciliaries is the overriding state governmental interest, it makes little sense to focus on the expiration date of the foreign limitations statute, as defendants argue we should, as the operative date in determining which domiciliaries may avail themselves of the New Jersey statute of limitations and "discovery rule," and which may not, since our interest would be to compensate all domiciliaries, uniformly and without exception. Moreover, choosing the respective statute based on timing of the domicile is arbitrary and

unfair. While this "drawing-the-line somewhere" approach may ease the burdens of judicial administration and reduce the danger of forum shopping, it unreasonably deprives the plaintiff who, not knowing that his right of action in the foreign state has been barred, becomes domiciled in New Jersey as a result of factors over which he has little control, such as a job transfer, or for other reasons totally unrelated to his injury and potential cause of action. *See Post Transaction or Occurrence Events in Conflict of Laws,* 69 *Colum.L.Rev.* 843, 863 (1969).

Moreover, we are unable to conclude that New York has any compelling interest in having its statute of limitations apply here to defeat recovery by plaintiff. New York's rejection of the "discovery rule" is not out of insensitivity to the need for compensating those wrongfully injured, but is rather based on the "countervailing considerations of ... social tranquility" afforded by a limitations statute and the observation that the issue is best addressed by the legislature, since its courts are ill-equipped to inquire into the incidents of hardship associated with application of the rule. *See Schwartz v. Heyden-Newport Chemical Corp.,* 12 *N.Y.*2d 212, 188 *N.E.*2d 142, 237 *N.Y.S.*2d 714, 718–719, *cert.* den. 374 *U.S.* 808, 83 *S.Ct.* 1697, 10 *L.Ed.*2d 1032 (1963). Since the matter will be tried in our courts, New York need not be concerned with that hardship.[3]

Nor can we conclude that New York's "deterrence" interest is any more compelling than ours. The record before us discloses that each defendant is a "nationally dispersed corporate 'presence'," *see Schum v. Bailey, supra,* 578 *F.*2d at 497, having no greater activity in New York than in New Jersey. Clearly, any New York interest in deterrence of future misconduct by defendants does not outweigh our overriding concern for the compensation of our domiciliaries.

---

[3]New York's reluctance to apply the "discovery rule" is not as directly in conflict with our governmental interests as it would appear. *See Fleishman v. Eli Lilly and Co.,* 62 *N.Y.*2d 888, 467 *N.E.*2d 517, 478 *N.Y.S.*2d 853 (1984). (Chief Judge Cooke dissenting). Moreover, New York's Legislature has intro-

We conclude that the State of New Jersey has a sufficient state governmental interest to apply its statute of limitations and "discovery rule" to this case. However, an essential predicate to our holding is that plaintiff was domiciled here when his action was instituted. We make no finding whether a sufficient showing by plaintiff of the requisite conditions establishing a New Jersey domicile has been made. *See Lyon v. Glaser*, 60 *N.J.* 259, 263–264 (1972). That issue must be addressed by the trial court below.

Accordingly, we affirm the denial of defendants' summary judgment motions and remand for the purpose of a plenary hearing to address the issue of plaintiff's domicile. If no bona fide New Jersey domicile is found, as a matter of law, a judgment of dismissal in favor of defendants should be entered. If, however, domicile is established, plaintiff's action should proceed on the merits not inconsistent with this opinion. We do not retain jurisdiction.

duced, in March 1985, Senate Bill S–5356 which would revive causes of action for DES victims for a one-year period from the effective date of the act.