Earl **WARNER,** Appellant,

v.

**AUBERGE GRAY ROCKS INN, LTEE.,** Appellee.

No. 86–5638.

United States Court of Appeals, Third Circuit.

Argued June 25, 1987.

Decided Sept. 3, 1987.

Audrey L. Jacobsen, Charles W. Craven (argued), Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, Pa., for appellant.

John A. Fratto (argued), Fratto, Alessi, Abbott & Fitchett, P.A., Barrington, N.J., for appellee.

Before GIBBONS, Chief Judge, WEIS, Circuit Judge, and POLLAK, District Judge [*]

## OPINION OF THE COURT

LOUIS H. POLLAK, District Judge:

The question before this court—a question of law, on which our review is plenary—is whether the district court was correct in determining, on the motion of defendant Auberge Gray Rocks Inn for summary judgment, that plaintiff Earl Warner's claim is time-barred. The question emerges from facts alleged in the complaint and taken as agreed for purposes of the motion—facts which may be quickly summarized:

In the late fall of 1983, Earl Warner, a New Jersey domiciliary, was vacationing at Auberge Gray Rocks Inn, a ski resort located and incorporated in the Province of Quebec. Mr. Warner, a long-time member of the South Jersey Ski Club, had come to the Inn with other club members for a skiing holiday, just as he had done the year before.[1] On the morning of December 1, Mr. Warner rode on a chair lift to the top of one of the ski slopes. On leaving the lift, Mr. Warner fell and hurt himself; this happened because his right ski boot caught in the boot of a fellow passenger who occupied the lift's adjacent seat, while his left ski got tangled in one of four bales of hay placed next to the lift as guides to disembarking skiers.

On May 7, 1985, Mr. Warner commenced this tort suit against the Inn in the United States District Court for the District of New Jersey. Because the controversy is one between a citizen of a state and an entity incorporated in a foreign country, Mr. Warner was able to invoke the court's diversity jurisdiction. The gravamen of Mr. Warner's claim is that the Inn's placement of the hay bales was negligent, resulting in injury to Mr. Warner.

Relying on Quebec's one-year statute of limitations, the defendant Inn moved for summary judgment. Plaintiff Warner resisted the motion, contending that New Jersey's two-year statute of limitations was controlling and that the suit was therefore timely. The district court concluded that the Quebec statute was applicable and hence that the suit was time-barred; accordingly, the court granted summary judgment.

## I.

■ This is a case in which federal jurisdiction rests on the citizenship of the parties and the claims and defenses derive from local—i.e., Quebec and New Jersey—law, not federal law. Accordingly, pursuant to the teaching of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), issues of a potentially dispositive nature must be determined as they would have been determined had this law suit been brought in a New Jersey state court. The requirement that a federal court sitting in diversity conform itself to the dispositive law administered by state courts in the same state embraces not only questions of a state's internal law but also

---

[*] Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[1]. Through advertising and in other ways, such as the direct solicitation of the business of the South Jersey Ski Club and other ski groups, the Inn has regularly sought the patronage of American vacationers, particularly including those from New Jersey.

questions of choice-of-law. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Griffin v. McCoach,* 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941); *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). Therefore, as the district court recognized, the question in this case is whether a New Jersey state court, confronted with this law suit, would have applied Quebec's one-year statute of limitations, which had run six months before this suit was commenced, or its own longer statute. In concluding that the applicable statute was Quebec's, the district court observed: "Being subjected to suit in a foreign jurisdiction after the expiration of Quebec's one-year statute of limitations is a financial risk not created or contemplated under Quebec law. It would be fundamentally unfair to subject a Quebec corporation acting entirely in that province to New Jersey's laws."

## II.

■ Determining how a New Jersey court would have ruled on the defendant's motion for summary judgment would present no apparent difficulty if, with respect to statutes of limitations, New Jersey were still operating within the framework of the American Law Institute's original Restatement of the Conflict of Laws (1934), or even the A.L.I.'s Second Restatement of the Conflict of Laws (1969). Both Restatements call for application of the forum's statute of limitations rather than that of some other jurisdiction.[2] But in 1973 the New Jersey Supreme Court struck out on a new path. The case was *Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412 (1973). The case was a products liability suit arising out of a truck accident caused by the blow-out of an allegedly defective tire manufactured by defendant Uniroyal and mounted on a trailer retailed by defendant Pullman. Mr. and Mrs. Heavner, the plaintiffs, were domiciled in North Carolina, the state in which Mr. Heavner bought the trailer and suffered the accident. Plaintiffs sued Uniroyal, a New Jersey corporation, and Pullman, a Delaware corporation, in a New Jersey state court. When the suit was filed, the applicable North Carolina statute of limitations had already expired. The New Jersey Supreme Court declined to salvage the case by applying the more generous New Jersey statute of limitations on which plaintiffs relied. In its opinion the court canvassed the views of several scholars who had inveighed against the forum-oriented rule that achieved dominance under the Restatements. The earliest of the writings from which the court quoted was an article written by Ernest Lorenzen of Yale in 1919, fifteen years before the A.L.I.'s promul-

---

2. In the original Restatement, the relevant provisions are Sections 603 and 604:

§ 603. STATUTE OF LIMITATIONS OF FORUM.
If action is barred by the statute of limitations of the forum, no action can be maintained though action is not barred in the state where the cause of action arose.

§ 604. FOREIGN STATUTE OF LIMITATIONS.
If action is not barred by the statute of limitations of the forum, an action can be maintained, though action is barred in the state where the cause of action arose.

In the Second Restatement, the relevant provisions are Sections 142 and 143:

§ 142. STATUTE OF LIMITATIONS OF FORUM
(1) An action will not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state.
(2) An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state, except as stated in § 143.

§ 143. FOREIGN STATUTE OF LIMITATIONS BARRING THE RIGHT
An action will not be entertained in another state if it is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy.

Both Restatements recognize that a forum may have a borrowing statute directing the forum to apply the limitations statute of another jurisdiction. See original Restatement, § 604, Comment b; Second Restatement, § 142, *supra,* and Comment f. And both Restatements recognize that a forum statute of limitations should not extend the life of a foreign statutory cause of action (e.g., one for wrongful death) which contains its own integral limitations period, one which is said to define the "right" rather than simply to limit the "remedy." See original Restatement, § 605; Second Restatement, § 143, *supra.*

gation of the first Restatement. Professor Lorenzen's thoughtful assessment—one which seems to anticipate the rationale of the district court in the instant case—was this:

> After the enforcement of the right of action is gone under the law governing the rights of the parties, it would seem clear upon principle that the same consequences should attach to the operative facts elsewhere. Nor is there any policy pointing to a different conclusion. It follows that no court should enforce a foreign cause of action which is barred by the law governing the substantive rights of the parties.[3]

The *Heavner* court's holding was as follows:

> We are convinced the time has come, for the reasons previously outlined, to discard the mechanical rule that the limitations law of this state must be employed in every suit on a foreign cause of action. We need go no further now than to say that when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state. New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will "borrow" the limitations law of the foreign state.[4]

The *Heavner* court was at pains to make plain that its decision did not signal a general abandonment of New Jersey's statutes of limitations in conflicts cases: "We presently restrict our conclusion to the factual pattern identical with or akin to that in the case before us, for there may well be situations involving significant interests of this state where it would be inequitable or unjust to apply the concept we here es-

pouse."[5]    And in subsequent cases the New Jersey courts have had occasion to make the point again. As the New Jersey Supreme Court pointed out in *O'Keefe v. Snyder*, 83 N.J. 478, 416 A.2d 862, 868, "[t]he *Heavner* rule provides a limited and special exception to the general rule that the rule of the forum determines the applicable period of limitations."

In particular, it is clear that when a plaintiff suing on an out-of-state cause of action is domiciled in New Jersey the courts of New Jersey are not disposed to find that, within the meaning of the *Heavner* formulation, "New Jersey has no substantial interest in the matter." New Jersey's approach to this aspect of *Heavner* was noted by this court in 1978, in *Schum v. Bailey*, 578 F.2d 493, 496 (3d Cir.1978): "The New Jersey cases have almost uniformly applied New Jersey law in instances in which the state has a significant compensation interest *viz.*, where the plaintiff was a New Jersey domiciliary."[6]    See also *Draper v. Airco, Inc.*, 580 F.2d 91, 99 (3d Cir.1978), and *Raskulinecz v. Raskulinecz*, 141 N.J.Super. 148, 357 A.2d 330 (1976); cf. *Allen v. Volkswagen of America, Inc.*, 555 F.2d 361 (3d Cir.1977), and *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28 (3d Cir. 1975). And just last year, in *Dent v. Cunningham*, 786 F.2d 173, 177 (3d Cir.1986), this court had further occasion to review New Jersey's treatment of this choice-of-law problem:

> As recently as 1985, a New Jersey court confirmed the state's significant interest in compensating its domiciliaries. *Pine v. Eli Lilly & Co.*, 201 N.J.Super. 186, 492 A.2d 1079 (A.D.1985). In *Pine* the plaintiff, a New Jersey domiciliary, sued the manufacturer of DES, a corporation doing business in New Jersey, for injuries he received in utero while his

---

**3.** Lorenzen, *The Statute of Limitations and the Conflict of Laws*, 28 *Yale L.J.* 492, 496–97 (1919). In the 1949 edition of his standard treatise on conflicts, Judge Goodrich, for many years a member of this court, cited Professor Lorenzen's "valuable" article as cogent authority, running counter to the prevailing forum-oriented orthodoxy. *Goodrich, Conflict of Laws* (3d ed. 1949) 241 n. 51.

**4.** *Heavner v. Uniroyal, Inc.*, 305 A.2d at 418.

**5.** *Id.*

**6.** "The New Jersey courts have been in the forefront of those states which have enlarged the circumstances in which residents can recover for personal injuries." *Schum v. Bailey, supra*, 578 F.2d at 504 (Appendix to concurring opinion of Gibbons, J.).

mother was administered the drug. The plaintiff was born in New York and resided there for most of his life. He established a New Jersey domicile only after he had discovered that his potential claim was time barred under New York law. *Id.* at 190, 492 A.2d at 1082. Disregarding its policy of discouraging forum shopping, the court applied the New Jersey statute of limitations, finding New Jersey's interest in favor of compensating its domiciliaries "paramount." *Id.* at 193, 492 A.2d at 1083. The court stated: "In most instances, our courts, as well as the Third Circuit, have favored applying New Jersey law in tort actions when the plaintiff is domiciled in New Jersey." [7]

Since Earl Warner, the plaintiff in the present case, is domiciled in New Jersey, what we held in *Dent v. Cunningham, supra,* 786 F.2d at 177, is controlling here: "Because of New Jersey's well-recognized interest in compensating its injured domiciliaries, we conclude that this case falls outside the narrow confines of *Heavner.* We hold that the district court erred in applying [Quebec's] one year statute of limitations to this action instead of New Jersey's two year statute." [8]

### III.

■ Willis Reese, the Reporter for the Second Restatement, has recently proposed a revision of Section 142, the principal provision on statutes of limitations. [9] Professor Reese's revision would jettison the forum-based orthodoxy of the Restatements discussed above and replace it with the black-letter principle that the forum court should apply the statute of limitations "of the state which, with respect to that issue, is the state of most significant relationship to the occurrence and the parties.…" In his supporting commentary, Professor Reese directly addresses the very issue which is central to this case:

> Decision becomes difficult in situations where, although the forum is not the state of most significant relationship to important issues in the case, some forum interest would be served by entertainment of the action, but this would be at the expense of the interests of another state which has a closer connection with the case and under whose statute of limitations the action would be barred. One such situation is where the domicile of the plaintiff is in the state of the forum and that of the defendant is in the other state with the most significant relationship to important issues in the case. In such a situation, the forum should only entertain the action in extreme and unusual circumstances. [10]

At the American Law Institute's most recent annual membership meeting, in May of 1987, Professor Reese's proposed black-

---

**7.** For a relentlessly detailed, and somewhat strident, critique of the New Jersey choice-of-law decisions, see Klein, *A Critical Analysis of New Jersey's Domicile-Driven Choice of Law Methodology,* 17 Seton Hall L.Rev. 204 (1987).

**8.** Since Mr. Warner's New Jersey domicile is dispositive of the statute of limitations question, it is unnecessary to consider whether the Inn's activity in soliciting New Jersey patrons, see footnote 1, *supra,* gives independent support for the proposition that New Jersey has what *Heavner* characterizes as a "substantial interest in the matter," negating resort to the statute of limitations of a jurisdiction other than the forum. As to the materiality of a defendant's forum contacts, see *Schum v. Bailey, supra,* 578 F.2d at 497, and *Dent v. Cunningham, supra,* 786 F.2d at 177; it may be noted that in *Heavner* the fact that the defendant tire manufacturer was a New Jersey corporation did not lead to displacement of the North Carolina statute of limitations (or to displacement of North Carolina's substantive tort law: "Our only possible interest is that

Uniroyal, a national company, is incorporated here and that is not enough". 305 A.2d at 414 n. 3.).

**9.** For section 142 in its current form, see footnote 2, *supra.*

**10.** *American Law Institute, Restatement of the Law, Second, Conflict of Laws, 1986 Revisions (Supplement: March 31, 1987),* pp. 8–9.

Professor Reese has had the counsel of a particularly able Ad Hoc Advisory Group whose members are drawn from the bench, the academy and the bar: our colleague Judge Becker, and Judge Alvin B. Rubin of the Fifth Circuit; Professors R. Lea Brilmayer of Yale, James Arthur Martin of the University of Michigan, Maurice Rosenberg of Columbia, Eugene F. Scores of the University of Illinois, and Donald T. Trautman of Harvard; and Michael Traynor, Esq., of San Francisco.

letter "state of most significant relationship" principle seemed to be acquiesced in, but disagreement over additional black-letter language appearing to dilute the principle led to rejection of the proposal as then formulated.[11] It is, however, a reasonable surmise that, in the fullness of time, a reformulation, building squarely on Professor Reese's general principle, will be brought back to the A.L.I. membership and will, after appropriate debate, be adopted. But that would not *ipso facto* change the law of New Jersey, for the A.L.I. has no formal mandate to revise the conflicts doctrines of the several states. Nor, indeed, do the federal courts, including the Supreme Court, have such a mandate, except in those infrequent instances in which a state conflicts doctrine is shown to offend a pertinent clause of the Constitution—most particularly, full faith and credit, or privileges and immunities, or due process, or equal protection.[12] Constitutional infirmities aside, state conflicts rules are binding on federal courts sitting in diversity by virtue of the rule announced in *Klaxon Co. v. Stentor Co., supra,* which extended to the special case of choice-of-law the general principle of deference to local law laid down in *Erie R. Co. v. Tompkins, supra.* However, there is a crucial difference between *Erie* and *Klaxon. Erie's* insistence that local law must govern diversity cases is freighted with constitutional obligation. Not so with *Klaxon:* as Judge Friendly observed, "the constitutional basis of *Erie* does not apply to choice of law issues...."[13] This means that *Klaxon* is a rule of policy for the sound administration of justice in the federal courts—a rule whose merit may be measured by its results. Whether, on balance, *Klaxon* advances the equilibrium of the federal system, or fosters parochialism, is matter for debate.[14] As long as the Supreme Court

and Congress are of the view that *Klaxon* should be retained, lower federal courts will carry out its mandate, as we do here.

### Conclusion

For the reasons stated, we reverse the judgment of the district court and remand this case for proceedings consistent with this opinion.

11. 55 U.S.L.W. 2653–54 (June 2, 1987).

12. For a recent example of a state rule found to be unconstitutional, see *Ferens v. Deere & Company,* 819 F.2d 423 (3d Cir.1987).

13. Friendly, *In Praise of Erie—And of the New Federal Common Law,* 39 *N.Y.U.L.Rev.,* 383, 402 (1964); see Bator, Mishkin, Shapiro, and Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* (1973 ed.) 713–14.

14. *Id.* at 714–17. Compare Hill, *The Erie Doctrine and the Constitution,* 53 *Nw.U.L.Rev.* 541, 556–68 (1958), and Cavers, *The Changing Choice-of-Law Process and the Federal Courts,* 28 *L. & Contemp.Prob.* 732 (1963), with *Schum v. Bailey, supra,* 578 F.2d at 502 (Appendix to concurring opinion of Gibbons, J.), and Pollak, *In Praise of Friendly,* 113 *U.Pa.L.Rev.* 39, 52 (1984).