754 A.2d 606 (2000)
333 N.J. Super. 88
Christine M. ERNY, Plaintiff-Appellant,
v.
Roy RUSSO, Defendant-Respondent, and
The Estate of Antoinette T. Merola, Milton Merola and Matthew Erny, Andrea D. Gambino, State of New Jersey and Anka Construction, Inc., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 2000.
Decided July 17, 2000.
*607 Anita Hotchkiss, Morristown, for plaintiff-appellant (Porzio, Bromberg & Newman, attorneys; Ms. Hotchkiss, of counsel and on the brief; Mary-Alice Barrett, also on the brief).
Edwin R. Matthews, Short Hills, for defendant-respondent (Edwin R. Matthews, attorney; Mr. Matthews, Robert J. Pansulla and Drew D. Krause, on the brief).
No brief was submitted on behalf of the Estate of Antoinette T. Merola and Milton Merola.
No other parties participated in the appeal.
Before Judges BAIME, EICHEN and WECKER.
The opinion of the court was delivered by EICHEN, J.A.D.
This appeal involves an automobile accident which occurred on Route 287 in Franklin Township on May 17, 1992, raising choice of law issues with respect to the application of New York and New Jersey's comparative negligence and joint and several liability laws.
*608 On the day of the accident, Antoinette Merola had come to New Jersey to shop.[1] The accident occurred when a vehicle Antoinette Merola was driving crossed the median into on-coming traffic after defendant Roy Russo's vehicle came into her lane of travel. As a result, she lost control of her vehicle and collided with the vehicle in which plaintiff Christine M. Erny (plaintiff) was a passenger.[2] Plaintiff sustained serious injuries in the accident. Antoinette Merola (decedent) was killed.
Plaintiff is a resident of New Jersey. Russo, Milton Merola, decedent's husband, and decedent were New York residents at the time of the accident. The Merola and Russo vehicles were registered and insured in New York. Russo was operating a vehicle owned by his mother, Terry Russo, also a New York resident. He was a student at Leheigh University in Pennsylvania at the time of the accident and traveled through New Jersey to go from school to his home in Long Island. Decedent was operating a vehicle owned by her husband, Milton Merola.
At the time of the accident, defendant Russo was covered under an automobile liability policy with limits of $1.5 million, while Milton Merola had only $100,000/ $300,000 liability coverage.
In December 1992, plaintiff filed a negligence action against the Estate of Antoinette Merola, Milton Merola (the Merola defendants), Russo, Matthew Erny, plaintiff's husband, a New Jersey construction company, and the State of New Jersey, among others.[3] In May 1993, after the New Jersey action was filed, the Merola defendants instituted a negligence/wrongful death action in the Supreme Court of New York against Russo and his mother. The action was later dismissed on the ground of comity because of the pendency of this action in New Jersey involving the same parties and claims.[4] Thereafter, the Merola defendants amended their crossclaim in the New Jersey action to assert similar claims for damages against Russo and his mother.
Subsequently, Judge David S. Cramp denied Mr. Merola's motion for summary judgment dismissing plaintiff's claims of vicarious liability against him as owner of the vehicle driven by decedent.[5]
A trial on liability only was subsequently conducted before Judge Salem Vincent Ahto, and a jury. The jury returned a verdict in favor of plaintiff,[6] allocating liability 40% to defendant Russo and 60% to the Merola defendants. The order for judgment entered by Judge Ahto reflects the 60-40 allocation of fault and also provides the same allocation on the crossclaim filed by the Merola defendants against Russo, producing a no-cause verdict in favor of Russo.
After the verdict, on September 17, 1996, plaintiff and the Merola defendants filed motions seeking to have New York comparative negligence law apply. Noting that the issue had never been raised before the trial and that no one had objected to the jury charge based on New Jersey law, Judge Ahto denied the motions.
*609 Nonetheless, the judge considered the motions on the merits. First, he concluded that plaintiff and the Merola defendants had not waived their right to raise the choice of law issue because choice of law issues had been in the case from the outset as reflected by Judge Cramp's having considered the agency issue,[7] and the previous attempts by the Merola defendants to file an action in New York.
As between the Merola defendants and Russo, he noted that "a genuine conflict between the laws of New York and New Jersey [exists] on the question of comparative fault." He explained:
New York subscribes to a pure comparative negligence theory in which contributory negligence does not bar recovery, but the amount of damages otherwise recoverable is diminished in the proportion which culpable conduct attributable to the claimant bears to the culpable conduct which caused the damages. [See N.Y. CPLR 1411.]
By contrast, New Jersey has adopted a different approach, which although not absolutely barring recovery by a claimant who has been contributorily negligent, requires ... that it be established that the claimant's negligence was not greater than the negligence of the person against whom recovery is sought, or was not greater than the combined negligence of the persons against whom recovery is sought. Our statute is contained in Title 2A:15-5.1. [See N.J.S.A. 2A:15-5.1.]
After pointing out the conflict, the judge then applied New Jersey's choice of law "flexible governmental interest analysis," identifying New Jersey's "legitimate interest in determining the standard of care to which all motorists upon its roads must adhere" as an important factor. The judge also remarked as to the "dominant," but not "predominant" interest that New Jersey has "in affording proper compensation to injured New Jersey residents." Relying on the Restatement (Second) of Conflict of Laws (1971) (Restatement) §§ 145 and 164(1), the judge observed that:
application of a test weighing respective governmental interests will usually result in a determination that the local law applicable to determine the preclusive effect of a plaintiff's contributory fault should be that of the state where the injury occurred.
He concluded that "New York's concern... for its injured citizens ... cannot exempt [them] ... from New Jersey's ... law setting standards for local conduct," citing O'Connor v. Busch Gardens, 255 N.J.Super. 545, 549-51, 605 A.2d 773 (App. Div.1992).
Next, relying on Ostrowski v. Azzara, 111 N.J. 429, 443 n. 5, 545 A.2d 148 (1988), the judge further noted that "comparative negligence is generally viewed as a liability doctrine rather than a damages doctrine." He also found that because the decedent traveled to New Jersey at least two times a week, her presence in this state was not fortuitous. Therefore, he concluded that New Jersey comparative negligence law applied.
Thereafter, a trial to establish damages was conducted by Judge Cramp. A separate jury returned a verdict in favor of plaintiff in the sum of $650,000. The trial court molded the verdict based on the percentages of fault of the Merola defendants (60%) and Russo (40%), entering a judgment in favor of plaintiff in the amount of $390,000 against the Merola defendants and $260,000 against Russo.
After the verdict, plaintiff filed a postjudgment motion seeking a ruling that New York law applies to resolve the issue of joint and several liability. Judge Cramp denied the motion, concluding that because New Jersey law governed the *610 comparative negligence issue, it also controlled the recovery of damages issue. He determined that the two concepts were "so intertwined" that "it would not be good policy to have one of those concepts decided under one state's law and the other under another state's law."
The effect of these choice of law rulings prevented the Merola defendants from proceeding with their cross-claim for damages against Russo,[8] and limited plaintiff's right to recover damages from Russo to only 40% of the judgment because New Jersey does not permit a plaintiff to recover 100% of her damages from a defendant who is only 40% at fault.
Under New York's law of joint and several liability, a plaintiff can obtain 100% recovery of damages from a defendant regardless of that defendant's percentage of fault. See N.Y. CPLR § 1602(6). In contrast, under New Jersey law, existing at that time, a defendant can only be required to pay 100% of a judgment if the defendant is 60% or more responsible for the total damages. See N.J.S.A. 2A:15-5.3a.
Consequently, plaintiff urged the judge to apply New York law to the issue of recovery of damages so that she could recover her total damages from Russo who had a $1.5 million policy as compared to Mr. Merola's policy of $100,000/$300,000, even though Russo was found only 40% at fault.

I.
Defendant Russo argues that plaintiff lacks standing to assert the Merola defendants' right to seek application of New York law to their cross-claim against Russo because her interest in the comparative negligence choice of law issue is too remote. Russo argues that even if the Merola defendants recovered a damage award from Russo on its cross-claim, there is no assurance that plaintiff would reap the benefit of those damages and, therefore, her interests are not sufficiently adverse to confer standing on her.
It is well settled that New Jersey has a more liberal standing rule than the federal courts. See Crescent Park Tenants Assoc. v. Realty Equities Corp., 58 N.J. 98, 107-08, 275 A.2d 433 (1971). In light of that principle, we have determined to review the merits of plaintiff's claims. Nonetheless, we would be remiss if we did not remark that plaintiff's standing to argue New York comparative negligence law as between the Merola defendants and Russo is tenuous in view of the inherent uncertainty of the collection process. Whether plaintiff could collect from the Merola defendants is highly speculative.

II.
We next consider Russo's argument that plaintiff waived any right she may have had to seek application of New York law. Recall that plaintiff waited until after the liability trial to seek the application of New York law on comparative negligence. Further, she waited until after the damages trial to argue that New York's joint and several liability law should apply. Nonetheless, in the exercise of his discretion, the judge allowed plaintiff to proceed with her motions.
In view of the broad discretion enjoyed by the trial court in such matters, we refrain from disturbing that determination. We note only that a party's notice to the court of his or her intention to raise a foreign law on one issue (here allegedly agency) does not necessarily preserve that party's right to delay until after the trial to raise additional, wholly distinct, foreign law issues. Nonetheless, we have concluded *611 the discretionary rulings do not warrant our interference, and we shall proceed to examine the merits of plaintiff's arguments.

III.
We begin with a discussion of plaintiff's argument that Judge Ahto erred in rejecting the application of New York comparative negligence law to the Merola defendants' cross-claim against Russo. Plaintiff argues New Jersey has absolutely no interest in regulating the liability of one New York tortfeasor to another New York tortfeasor, and that plaintiff should not be penalized simply because New Jersey law would bar the Merola defendants from recovering damages from Russo under New Jersey's comparative negligence statute. N.J.S.A. 2A:15-5.1.
Plaintiff further argues that New York's interest in having its comparative negligence law apply is "far more substantial" than New Jersey's interests because of the numerous contacts of the defendants with New York: (1) they are New York residents; (2) they drove New York registered and insured automobiles; (3) they had been parties to an action in respect of this accident in the Supreme Court of New York; and (4) defendant Milton Merola had already been held liable under New York agency law.[9]
In a choice of law dispute, the first step is to identify whether an actual conflict of laws exists. Veazey v. Doremus, 103 N.J. 244, 248, 510 A.2d 1187 (1986). In the present case, there is a conflict between the comparative negligence and joint and several liability laws of New York and New Jersey. Compare N.Y. CPLR 1411 and 1601 and 1602 with N.J.S.A. 2A:15-5.1 and 2A:15-5.3.
As earlier noted, under New Jersey's comparative negligence statute, a defendant who is more than 50% at fault cannot recover any damages he may have sustained as the result of his or her co-defendants' negligence. Under New York law, a negligent defendant may recover damages from his negligent co-defendants even if he is more than 50% at fault, his recovery being diminished only in proportion to his or her own fault.[10]
As for joint and several liability, at the time the accident occurred and her complaint was filed, under New Jersey law, a defendant could only be required to pay 100% of the judgment when he or she was 60% or more responsible for the total damages.[11] Under New York law, any defendant against whom recovery is allowed can be required to pay 100% of the judgment even when his or her percentage of fault is *612 much less. Thus, there is a conflict between the laws of the two states on the issues of comparative negligence and recovery of damages.
When an actual conflict exists, the second step in the governmental-interest analysis is to determine the interest that each state has in resolving the specific issue in dispute. Gantes v. Kason Corp., 145 N.J. 478, 485, 679 A.2d 106 (1996). That analysis requires an identification of the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties. Ibid.; Veazey, supra, 103 N.J. at 248, 510 A.2d 1187. If a state's contacts are not related to the policies underlying its law, then the state does not have an interest in having its law apply. Ibid. Moreover, it is the qualitative and not the quantitative nature of a state's contacts which is decisive in determining whether a state's law should apply. Ibid.
There are two primary recognized governmental policies and interests in choice-of-law determinations involving torts. They are a state's interest in assuring compensation for its injured domiciliaries and the deterrence of tortious conduct. Pine v. Eli Lilly and Co., 201 N.J.Super. 186, 192, 492 A.2d 1079 (App.Div.1985). The policy of deterrence is based on the thesis that exacting compensation from a wrongdoer will deter his or her future misconduct, and is ordinarily associated with the sovereignty in which the past misconduct took place and in which future misconduct may occur. Ibid. The state in which the accident occurred has an interest in maintaining safety and deterring such conduct. Veazey, supra, 103 N.J. at 249, 510 A.2d 1187. See O'Connor, supra, 255 N.J.Super. at 549-51, 605 A.2d 773 (holding that Virginia's contributory negligence rule, rather than New Jersey's comparative negligence rule, applied in action brought in New Jersey by New Jersey resident who was injured on amusement park ride in Virginia; Virginia's legitimate interest in deterring unsafe local property conditions and unsafe conduct was directly related to the substantive issue of comparative versus contributory negligence and thus Virginia had the most significant relationship to the injuries and occurrence).
A. Comparative Negligence Issue.
We have applied these conflict of laws principles to Judge Ahto's determination on the comparative negligence issue and affirm substantially for the reasons he expressed in his comprehensive oral opinion on September 17, 1996. Nonetheless, we deem it appropriate to add these further observations.
Plaintiff's contentions reflect a misconceived view of the significance of the New York contacts. In the first place, it is the "qualitative, not the quantitative, nature of that state's contacts that ultimately determines whether its law should apply." Fu v.Fu, 160 N.J. 108, 125, 733 A.2d 1133 (1999) (citing Pfizer, Inc. v. Employers Ins. of Wausau, 154 N.J. 187, 198, 712 A.2d 634 (1998)). In Fu, our Court observed that "[i]n personal injury cases, `the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law.'" Ibid. (quoting Restatement, supra, § 145 comment e). It further iterated the firm principle that "with only `rare exceptions, local law of the state where conduct and injury occurred will be applied' to determine an actor's liability." Id. at 125-26, 733 A.2d 1133 (citing Restatement, supra, § 145 comment d). Here, both the tortious conduct and injuries occurred in New Jersey.
As Judge Ahto recognized, New Jersey retains an inherent and obvious interest in regulating tortious conduct that occurs on its highways pursuant to its own set of laws governing liability, especially since "strictly speaking ... comparative negligence [is generally viewed as] a doctrine of liability rather than damages." Ostrowski, supra, 111 N.J. at 443 n. 5, 545 A.2d 148. Significantly, this court has previously remarked *613 that New York conflicts rules themselves tend to be more weighted toward the law of the place of injury. See O'Connor, supra, 255 N.J.Super. at 550, 605 A.2d 773. See McCarthy v. Coldway Food Express Co., 90 A.D.2d 459, 454 N.Y.S.2d 837 (App.Div.1982).
Moreover, a ruling that New York comparative negligence law applies would have the unsalutary effect of holding that foreign law may follow a party into a state solely to improve a plaintiff's chances of enhancing her recovery. Such a holding would allow an "impermissible intrusion" into the affairs of another state. O'Connor, supra, 255 N.J.Super. at 549, 605 A.2d 773. In contrast, as the Fu Court remarked, "the application of New Jersey law would advance the [governmental] interest in maintaining certainty, predictability, and uniformity." 160 N.J. at 154, 733 A.2d 1133 (citing Restatement, supra, § 6). Notably, "New Jersey has an interest in the uniform application of its law to assure that victims of automobile accidents `are treated fairly and uniformly.'" Fu, supra, 160 N.J. at 132, 733 A.2d 1133 (citations omitted). Its interest, however, is not in assuring that "`some of those victims... be granted extraordinary rights and preferences.'" Ibid.
Plaintiff, nevertheless, argues that application of New York comparative negligence law in this case will not frustrate the policies of New Jersey because the dispute involves only New York domiciliaries. We disagree.
In adopting the law of comparative negligence, the Legislatures in both New York and New Jersey sought to ameliorate the rigid consequences that flowed from the application of the doctrine of contributory negligence. Barker v. Kallash, 91 A.D.2d 372, 459 N.Y.S.2d 296 (App.Div.1983), aff'd, 63 N.Y.2d 19, 479 N.Y.S.2d 201, 468 N.E.2d 39 (1984); Campione v. Soden, 150 N.J. 163, 174, 695 A.2d 1364 (1997). New York accomplished this result by a statute that allows a negligent party to recover damages from another tortfeasor in proportion to the culpable conduct of that tortfeasor, irrespective of the percentage of fault of either party. In contrast, New Jersey accomplished this result by a statute that allows recovery by a culpable party provided his or her fault is equal to or less than the other culpable party's fault. Thus, both states' laws are designed to accomplish a fair apportionment of damages between a claimant and a defendant.
The fact that New York allows a greater recovery does not dictate that its laws should take priority over those of New Jersey solely because a plaintiff may reap a greater benefit therefrom. As we observed in Marinelli v. K-Mart Corp., 318 N.J.Super. 554, 566, 724 A.2d 806 (App. Div.1999), aff'd o.b., 162 N.J. 516, 745 A.2d 508 (2000), "the fact that [foreign] law might afford plaintiffs a greater recovery than the law of New Jersey is `irrelevant' in resolving the choice of law issue before us" (citing our decision in Fu v. Fu, 309 N.J.Super. 435, 707 A.2d 473 (App.Div. 1998), aff'd o.b., 160 N.J. 108, 733 A.2d 1133 (1999)); see also Haggerty v. Cedeno, 279 N.J.Super. 607, 612, 653 A.2d 1166, (App.Div.), certif. denied, 141 N.J. 98, 660 A.2d 1197 (1995).
B. Joint and Several Liability
Plaintiff next argues that New York's law of joint and several liability should apply because New Jersey has no interest in protecting a New York resident from paying the full amount of her recovery, especially where there is a $1.5 million liability policy available which will insure that recovery. She maintains that New York residents are aware that unlimited liability in motor vehicle cases will be imposed on them, even though they are found to be only minimally responsible to an injured party, and accordingly they "pay [insurance] premiums that are calculated for that exposure." She asserts that this assures there will be a financially responsible party available to provide damages to an innocent victim when a New York driver is found negligent. This assurance, *614 she insists, is not only for the benefit of New York residents, but for out-of-state residents as well. She also argues that despite the fact the accident occurred in New Jersey, the significant contacts with New York implicate and relate more importantly to New York's policies than to New Jersey's policies. Therefore, she claims New York has the strongest interest in having its law govern plaintiff's recovery of damages.
Generally, conflict of laws determinations are to be made on an issue-by-issue basis. O'Connor, supra, 255 N.J.Super. at 547, 605 A.2d 773. That is not so, however, in a case where New Jersey's comparative negligence law has already been applied; in such case, our law of joint and several liability, which is essentially a damages provision, will be applied. See Marinelli, supra, 318 N.J.Super. at 568-69, 724 A.2d 806.
As Judge Stern observed in Marinelli:
The Busik [v. Levine, 63 N.J. 351, 368-70, 307 A.2d 571, appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973) ] plurality written by Chief Justice Weintraub follows the majority rule that "in the context of conflict of laws,... `damages' go to the substance," and thus the State whose substantive law controls also governs the question of damages. See also Restatement (Second) Conflict of Laws §§ 145, 164, 171. We, therefore, hold that New Jersey law controls the issue of contribution. This flows from our holding on the original appeal that the New Jersey law of comparative negligence governs this matter and that the "governmental interest" test points to New Jersey substantive law....
[318 N.J.Super. at 568, 724 A.2d at 814 (emphasis added).]
The Supreme Court affirmed Marinelli on Judge Stern's opinion. See 162 N.J. 516, 745 A.2d 508 (2000). In Marinelli as here, the accident and injury occurred in New Jersey, and the injured party was a New Jersey resident. In applying New Jersey law, Judge Stern stated:
Although Pennsylvania has a strong interest in the compensation of its own domiciliaries, it has no interest in compensating non-domiciliaries, such as the plaintiffs, who reside in New Jersey.... Thus, the fact that Pennsylvania law might afford plaintiffs a greater recovery than the law of New Jersey is "irrelevant" in resolving the choice of law issue before us. Fu v. Fu, 309 N.J.Super. 435[, 707 A.2d 473] (App. Div.), appeal granted, 155 N.J. 585[, 715 A.2d 988] (1998); Haggerty v. Cedeno, 279 N.J.Super. 607, 612[, 653 A.2d 1166] (App.Div.), certif. denied, 141 N.J. 98[, 660 A.2d 1197] (1995). "It would indeed be anomalous to apply foreign law solely to gain access to a deep pocket when local law denies that access." Haggerty, supra, 279 N.J.Super. at 612[, 653 A.2d 1166].

Pennsylvania simply does not have an interest in making its resident, Ford, who was found only 10% responsible, liable for the entire award for the accident which occurred in New Jersey, thereby injuring a resident of this state. Accordingly, we hold that New Jersey has a greater interest in guarding against injury here and in protecting its innocent victims. We further hold that the New Jersey law of damages, even though it gives less protection to its resident in these circumstances, is to be applied.
[318 N.J.Super. at 566-67, 724 A.2d at 813 (citations omitted) (emphasis added).]
For the same reasons as Judge Stern expressed in Marinelli, we conclude that New York does not have a sufficiently significant interest in making its resident Russo, who was found 40% responsible for plaintiff's injuries, liable for her entire judgment despite the existence of Russo's $1.5 million automobile liability policy. Further, plaintiff has not presented any controlling authority for the proposition *615 that New York would welcome another state's imposition of full responsibility on its resident solely because New York law would permit it. We recognize plaintiff's claim that the enhanced liability exposure created by New York's joint and several liability law is a factor in the calculation of automobile insurance rates in that state. But we also recognize that those rates are not likely to have been derived from any expectation that New York law would apply when a New York insured negligently causes an accident in New Jersey.
In sum, Judge Cramp's determination to apply New Jersey's doctrine of joint and several liability was proper and we affirm.

IV.
To the extent we have not addressed any additional contentions raised by plaintiff in this opinion, we deem them to be without merit. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] We infer this fact from evidence in the record that Antoinette Merola traveled to New Jersey on a regular basis to shop.
[2] Plaintiff's husband Matthew Erny was driving the vehicle.
[3] The case was one of several consolidated cases arising out of the accident. Apparently, the original defendants included six New Jersey residents and three New York residents who allegedly had continuous contact with New Jersey.
[4] The estate appealed the dismissal but later agreed to dismiss the appeal.
[5] An order was entered on June 25, 1996. It simply denies the summary judgment motion. The proposed language in the form of order submitted by Mr. Merola, that New York law applies to the agency issue raised by his motion, was stricken by the judge.
[6] The trial also adjudicated the liability of the defendants to other plaintiffs, Andrea Gambino and Antonia Gambino, Matthew Erny, and Michael Rappa.
[7] As previously noted, the order of June 25, 1996 entered by Judge Cramp did not include a finding on that issue.
[8] Plaintiff contends that such a cross-claim, if successful, could contribute to easing collection of her judgment against the Merola defendants because, if they are successful in recovering damages from Russo, those damages would augment their assets and aid plaintiff in execution on her judgment against them. The highly speculative nature of this argument is dealt with later in this opinion.
[9] The record does not support this assertion because Judge Cramp deleted the reasons for his denial of Milton Merola's motion for summary judgment in his order of June 25, 1996.
[10] N.Y. CPLR 1411 provides:

In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages.
N.J.S.A. 2A: 15-5.1 provides:
Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought or was not greater than the combined negligence of the persons against whom recovery is sought. Any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering.
[11] N.J.S.A. 2A:15-5.3 provides, in pertinent part:

Except as provided in subsection d. of this section, the party so recovering may recover as follows:
a. The full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages.
[L. 1987, c. 325, § 2, eff. Dec. 18, 1987.]