705 A.2d 1252

BOYSON, INC., PLAINTIFF–RESPONDENT/CROSS–APPELLANT, v. ARCHER & GREINER, P.C., A PROFESSIONAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT–APPELLANT/CROSS–RESPONDENT, AND ITT HARTFORD INSURANCE GROUP, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1997—Decided February 23, 1998.

Before Judges LONG, STERN and KLEINER.

*Michael K. Tuzzio,* argued the cause for appellant/cross-respondent Archer & Greiner (*Ronan, Tuzzio & Giannone,* attorneys; *Mr. Tuzzio,* of counsel; *Mr. Tuzzio, Jennifer Fisher Weiss* and *Anthony M. Tracy,* on the briefs).

*Trudy Maran,* argued the cause for respondent/cross-appellant Boyson, Inc. (*Ms. Maran,* on the briefs).

*Andrew L. Indeck,* argued the cause for respondent ITT Hartford Insurance Group (*Purcell, Ries, Shannon, Mulcahy & O'Neill,* attorneys; *Mr. Indeck,* of counsel; *Mr. Indeck* and *Kathleen J. Devlin,* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

We granted leave to appeal from the denial of defendant Archer & Greiner's motion for summary judgment in this legal malpractice case relating to its representation of Boyson, Inc. in the Eastern District of Pennsylvania. Boyson (now plaintiff in the malpractice action) cross-appeals from the motion judge's application of New Jersey law in deciding the summary judgment motion. The parties agree that Boyson would have no cause of action if the products hazard exclusion of its comprehensive liability policy was enforceable, so that Archer & Greiner's failure to seek a defense and indemnification for Boyson from its carrier would not constitute malpractice. The parties also agree that the exclusion was enforceable in New Jersey, but not in Pennsylvania. We remand for reconsideration of Archer & Greiner's motion for summary judgment under Pennsylvania law including its choice-of-law principles.

## I.

Archer & Greiner was retained by Boyson to represent it as a defendant in a products liability diversity action filed in the United States District Court for the Eastern District of Pennsylvania. Boyson was insured under a comprehensive general liability ("CGL") policy issued by co-defendant ITT Hartford Insurance Group ("Hartford"). Boyson manufactured parts for a conveyor system installed in a Pennsylvania plant from which Alois Mrazik suffered a work-related injury. Boyson was thereafter sued by Mrazik in the products liability action. The case was ultimately settled, and Boyson thereafter brought this action against Archer & Greiner and Hartford to recover its costs of defense and settlement of the Mrazik action.

Archer & Greiner moved for summary judgment asserting that there was no coverage in light of the "products hazard" exclusion of the CGL policy, and, therefore, the law firm was not negligent in failing to notify Hartford of the claim against Boyson. Archer & Greiner argued that New Jersey law governed resolution of the "conflict ... between the law of New Jersey and Pennsylvania relative to exclusions in comprehensive general liability policies ... and their applicability to negligent failure to warn claims." Hartford also moved for summary judgment based on the exclusion, as well as on Boyson's failure to provide it with timely notice, its settlement of the case and its failure to comply with the entire controversy doctrine. Boyson opposed both motions, contending that Pennsylvania law governed the question of coverage and that "Pennsylvania law holds that products hazard exclusions in general liability policies do not preclude coverage of negligent failure to warn claims."

The motion judge granted Hartford's motion for summary judgment. He held that because Boyson's manufacturing facility was in this state and the insurance contract was made here, New Jersey law controlled the issue of coverage and, thus, the products hazard exclusion to the CGL policy applied. The judge, however, denied Archer & Greiner's summary judgment motion because of

an expert report that the firm "deviated from the acceptable practice of law." A motion for reconsideration was also denied.

On this appeal Archer & Greiner argues that:

(1) if New Jersey law applies to the Hartford policy [as the motion judge concluded], then the products liability exclusion contained therein is valid: and (2) if this exclusion is valid, then Boyson cannot maintain its cause of action against Archer & Greiner, P.C. for malpractice as Archer & Greiner, P.C. could not have breached its duty to Boyson by failing to utilize a policy the provisions of which were inapplicable to plaintiff Mrazik's allegations of product liability [in the underlying tort action]. Therefore, if New Jersey law is the applicable choice of law for the Hartford policy, plaintiff Boyson's cause of action against Archer & Greiner, P.C. for malpractice must fail.

In essence, Archer & Greiner contends that it could not have committed malpractice for "allegedly not pursuing the Hartford policy in a timely fashion" [1] if there was no coverage as a matter of law.

## II.

Boyson is in the business of manufacturing and selling conveyor systems and component parts. Its principal place of business is in East Brunswick, New Jersey.

The federal product liability action arose out of an accident which took place on June 28, 1989 on the premises of the Exide Corporation in Allentown, Pennsylvania. Mrazik, a Pennsylvania resident and an employee of Exide, allegedly "suffered personal injuries when one of the batteries which he was filling fell off the conveyor belt, causing an acid burn to his leg." His products liability action alleged, among other things, that Boyson "fail[ed] to design, manufacture and sell the conveyor and its parts with due care," "fail[ed] to incorporate on the conveyor proper and adequate safety devices for use in safety" and "fail[ed] to warn or

---

[1] Hartford also contended that even if the exclusion was not applicable, it was nevertheless entitled to summary judgment because Boyson failed to give Hartford timely notice of the claim. Boyson does not contest that proposition and suggests it supports the different results on the summary judgment motions. Nor does Boyson cross-appeal from the grant of summary judgment to Hartford.

adequately warn of the dangers attendant upon the use of the conveyor."

The component parts of the conveyor on which Mrazik was working had been sold to Exide by Boyson. Exide incorporated the component parts into its existing conveyor system.

Boyson took the position that it had no coverage in the Mrazik action. As already stated, Boyson had a comprehensive general liability policy with Hartford during the relevant period. An endorsement [2] specifically excluded "bodily injury or property damage included within the Contemplated Operations Hazard or the Products Hazard." Products Hazard was defined as follows:

O. **Products Hazard** includes **Bodily Injury** and **Property Damage** arising out of the **Named Insured's Products** or reliance upon a representation or warranty made at any time with respect thereto, but only if the **Bodily Injury** or **Property Damage** occurs away from premises owned by or rented to the **Named Insured** and after physical possession of such products has been relinquished to others.

Archer & Greiner has represented Boyson "for many years," and on or about April 23, 1991, Archer & Greiner undertook to represent plaintiff in the Mrazik action. According to Boyson, Archer & Greiner knew "full well, based upon their past discussions concerning Boyson's insurance needs, that Boyson was covered by [Hartford's] comprehensive general liability insurance policy." Boyson now alleges that Archer & Greiner negligently failed to seek coverage because it "apparently did not know" that Pennsylvania law "holds that a products hazard exclusion in a comprehensive general liability policy does not preclude coverage for an action alleging a negligent failure to warn in Pennsylvania." In August 1992, Peter M. Patton, Mrazik's attorney, had so advised Archer & Greiner. On October 13, 1992, John C. Grady,

---

[2] Apparently, Boyson's decision to limit its coverage was based on its desire to reduce costs for products liability insurance, Archer & Greiner's analysis of Boyson's history of products claims, and Archer & Greiner's subsequent recommendation that Boyson "drop the coverage for product liability, invest the savings on the policy and retain [Archer & Greiner] to represent Boyson in any future claims." The decision to "self insure" was "in essence ... just a business decision."

an Archer & Greiner attorney, forwarded Patton's letter to Boyson's broker, stating that Boyson:

does not maintain insurance at present for such claims. We have explained this to the plaintiff. We are in a position where there is a significant exposure to Boyson for which they have neither insurance coverage nor adequate reserves.... The plaintiff has raised ... that Pennsylvania case law has interpreted exclusions in these policies for products hazards are not applicable to claims for negligent failure to warn.... Please review ... and let me know if there is a possibility that coverage may exist for this claim and how Boyson must go about invoking it to address this problem.

Grady also wrote to Patton the same day. He advised Patton that he had "written to the insurance broker regarding [Patton's] position that [Boyson's] policy may provide coverage for Mr. Mrazik's claim." Grady added that Boyson "feels strongly that they do not have any liability for Mr. Mrazik's injury and they have no presently involved insurance coverage or reserves to provide a lump sum settlement to Mr. Mrazik."

Settlement was subsequently discussed. According to plaintiff, on the advice of Archer & Greiner, Boyson's president "very reluctantly" agreed to settle the Mrazik matter on October 30, 1992 for $132,500. On October 30, 1992 Grady wrote directly to Hartford discussing the case, the question of coverage, and the settlement discussions. He advised Hartford "that Boyson intends to enter into this settlement to cap its potential liability unless I hear from you to the contrary." [3] Grady added:

One other aspect that the plaintiff has expressed an interest in pursuing is receiving a denial of coverage from you and based on it taking an assignment of a bad faith action from Boyson to pursue collection of a stipulated judgment. As I have expressed to you I am very uncomfortable about Boyson participating in such a process. In practical terms I also suspect that if the plaintiff knew coverage was available that their settlement number would go up, i.e.; if they see the Hartford as a party to be released they would revise their figure upward to settle or they may refuse to consummate the settlement without a denial letter from the Hartford.

---

[3] In its brief on this appeal, Archer & Greiner states that plaintiff gave a release on February 10, 1993, which would have been after coverage was denied.

On December 30, 1992 Hartford wrote Boyson that it had no obligation to provide coverage because (a) under controlling New Jersey law, "there is no coverage" for any of the allegations made against Boyson; and (b) "even if there were coverage, under Pennsylvania Law, ... there would be no coverage because (1.[the] settlement breached the terms of the policy, and 2. The Hartford was prejudiced by that breach)."

Boyson subsequently filed this legal malpractice action claiming that Archer & Greiner failed "to properly represent and defend the plaintiff" in the Mrazik case.

## III.

Archer & Greiner argues that the issue of coverage is controlled by New Jersey law "because the insurance contract was made in New Jersey and the risk which was to be insured took place as a result of manufacturing activities in New Jersey." The parties agree (as admitted in Boyson's words) that in New Jersey "a products hazard exclusion in a comprehensive general liability policy precludes coverage for products liability actions," citing *Inductotherm Corp. v. New Jersey Mfrs. Cas. Ins. Co.*, 83 *N.J.Super.* 464, 200 *A*.2d 358 (Law Div.1964), at least where (as here) an accident occurs after the insured sold, distributed or relinquished possession of the product.[4] Boyson contends, however, that the Mrazik action alleged "a failure to warn, a failure to use due care, a failure to use reasonable care and a failure to ... inspect" and that "under Pennsylvania law, the Hartford policy would have provided coverage to Boyson in the Mrazik action, despite the products hazard exclusion." Boyson further contends that Pennsylvania choice-of-law principles applied to the case "venued in Pennsylvania," and that under governing Pennsylvania law the

---

[4] Given the parties' agreement as to the status of New Jersey law at all relevant times, we do not explore that subject or take a position on the legal principle involved. *See N.J.S.A.* 2A:58C–2 setting forth the nature of a products liability claim.

exclusion does "not preclude coverage of negligent failure to warn claims." [5]

The trial judge found that "the insured and the insurance company could reasonably foresee that the insured risk was in New Jersey," "a comprehensive general liability policy with a product hazard exclusion also excludes negligent failure to warn claims which are products liability claims in this [forum]" and "that the justified expectations were that this New Jersey corporation would be expected to be covered at its sole location, which is the State of New Jersey." He found this to be particularly so because the exclusion could not be interpreted differently in each State in which Boyson did business. Hence, the judge concluded that "the basic policies underlying our insurance law dictate[ ] that New Jersey be the choice."

We agree with the judge's analysis of the risks and interests involved and with his conclusion if this matter is to be resolved under New Jersey law. However, because the Mrazik case was filed in Pennsylvania, that State's choice-of-law principles would have governed consideration of the policy exclusion and New Jersey law would have controlled only if Pennsylvania choice-of-law principles require disposition under New Jersey law.

## IV.

Since this action was brought in New Jersey, we must apply the choice-of-law rules of New Jersey. *Gantes v. Kason Corp.*, 145 *N.J.* 478, 484, 679 *A.*2d 106 (1996); *see also Black v. Walker*, 295 *N.J.Super.* 244, 253, 684 *A.*2d 1011 (App.Div.1996) (finding that "[s]ince New Jersey was the forum, New Jersey choice-of-law principles determine which law applies"). And, as Archer & Greiner argues, in considering the interpretation and applicability of an insurance contract, we usually utilize the New

---

[5] Without examining Pennsylvania substantive choice-of-law principles, Boyson assumes that because the federal district court had to apply Pennsylvania law, the exclusion would not be enforceable.

Jersey choice-of-law principles associated with contract actions. *See Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 134 *N.J.* 96, 102–03, 629 *A.2d* 885 (1993). However, in our view, as the alleged legal malpractice relates to Archer & Greiner's representation of Boyson with respect to a complaint filed in a Pennsylvania federal court, we must consider New Jersey choice-of-law principles governing the determination of whether the firm committed legal malpractice by failing to pursue a defense from Hartford on behalf of Boyson in that forum. *See, e.g., Santos v. Sacks,* 697 *F.Supp.* 275, 278–79 (E.D.La.1988); *Collins v. Miller & Miller Ltd.,* 189 *Ariz.* 387, 943 *P.2d* 747, 754 (App.1996). A further complication flows from the fact that a malpractice action consists of a "blend of contract and tort elements," *Bailey v. Pocaro & Pocaro,* 305 *N.J.Super.* 1, 8, 701 *A.2d* 916 (App.Div. 1997); *see also Santos v. Sacks, supra,* and the alleged malpractice in this case relates to an issue of coverage in a products liability-tort action involving an injury to a Pennsylvania worker, commenced in Pennsylvania against a New Jersey manufacturer represented by a New Jersey law firm.

■ New Jersey generally follows the governmental-interest analysis in deciding choice-of-law questions. *Gantes v. Kason Corp., supra,* 145 *N.J.* at 484, 679 *A.2d* 106; *Veazey v. Doremus,* 103 *N.J.* 244, 247, 510 *A.2d* 1187 (1986); *Butkera v. Hudson River Sloop "Clearwater", Inc.,* 300 *N.J.Super.* 550, 553, 693 *A.2d* 520 (App.Div.1997). Under that analysis, the law to be applied will be that of the state with the greatest interest in governing the particular matter in issue. *Gantes v. Kason Corp., supra,* 145 *N.J.* at 484, 679 *A.2d* 106; *Veazey v. Doremus, supra,* 103 *N.J.* at 248, 510 *A.2d* 1187.

> [T]he object of the governmental-interest analysis is to determine, based on the policies underlying the respective law of each state and the significance of its respective contacts with the litigation, which state, in the circumstances, has the paramount interest in the enforcement of its law respecting the specific issue in question.

> [*Butkera, supra,* 300 *N.J.Super.* at 553, 693 *A.2d* 520.]

New Jersey has abandoned "the mechanical and inflexible *lex loci contractus* rule in resolving conflict-of-law issues in liability-insurance contracts" in favor of "a more flexible approach that focuses on the state that has the most significant connections with the parties and the transaction." *Gilbert Spruance, supra,* 134 *N.J.* at 102, 629 *A.*2d 885. In *State Farm Mut. Auto. Ins. Co. v. Simmons' Estate,* 84 *N.J.* 28, 37, 417 *A.*2d 488 (1980), the Supreme Court held that in resolving choice-of-law issues regarding liability insurance coverage, the law of the place of contracting usually governs. This is because "the law of the place of contract 'generally comport[s] with the reasonable expectations of the parties concerning the principal situs of the insured risk,'" *Gilbert Spruance, supra,* 134 *N.J.* at 102, 629 *A.*2d 885 (quoting *State Farm,* 84 *N.J.* at 37, 417 *A.*2d 488). And with respect to CGL policies, the Court has noted that "the law of the state that 'the parties understood was to be the principal location of the insured risk ...'" should govern, "unless with respect to the particular issue, some other state has a more significant relationship." *Id.* at 103, 629 *A.*2d 885, applying *Restatement (Second) of Conflicts of Laws* §§ 6, 188, 193 (1971).

We, therefore, agree with Archer & Greiner that in a New Jersey action regarding a CGL, *Gilbert Spruance* controls the conflicts of law analysis [6] and that when an actual conflict exists,

---

[6] *Gilbert Spruance* involved a complaint alleging that plaintiff's CGL required its insurer to defend it against multiple toxic-tort claims for personal injury and property damage arising from waste transported from Pennsylvania to dumps in New Jersey. *Gilbert Spruance, supra,* 134 *N.J.* at 98–99, 629 *A.*2d 885. The Supreme Court was faced with the question of whether to apply New Jersey or Pennsylvania law because the outcome would be different. The Court addressed the "knotty problem of how to determine where the insured risk is located," *id.* at 112, 629 *A.*2d 885, and determined that New Jersey law would control because it was the state where the waste was disposed, and because it was where the foreseeable risks of injury were involved. *Id.* at 113–14, 629 *A.*2d 885. Here, the motion judge applied those principles and held that "the insured [Boyson] and the insurance company could reasonably foresee that the insured risk was in New Jersey. The principal place of business in a company that essentially had a multistate operation ... meets the dominant relationship test of

the governmental-interest analysis requires a determination of the interest each state has in resolving the specific issue in dispute.[7] *Gantes v. Kason Corp., supra,* 145 *N.J.* at 485, 679 *A.*2d 106. However, this is neither a products liability case, an action questioning the issue of coverage nor a proceeding designed to interpret an exclusion. This is a legal malpractice case based upon the conduct of an attorney with respect to the handling of litigation in Pennsylvania.

■ It may be that in a New Jersey law suit by a New Jersey client against its New Jersey attorneys regarding representation in another state, New Jersey law should usually govern, at least with respect to an allegation of transactional malpractice. *See Collins v. Miller & Miller, supra,* 943 *P.*2d at 752–754. But, as we deal with a Pennsylvania action involving an accident in Pennsylvania causing injury to a Pennsylvania resident, we have no hesitation in concluding that New Jersey choice-of-law principles require application of Pennsylvania law in deciding whether counsel proceeded competently in defending the action. *See Santos v. Sacks, supra,* 697 *F.Supp.* at 278–79 (applying Louisiana malpractice law with respect to the conduct of a lawyer who filed suit in Louisiana).

■ We therefore agree with Boyson that the trial court's ruling that New Jersey law governed the application of its CGL exclusion was erroneous because "[t]his is a legal malpractice case

---

*Gilbert Spruance vs. Pennsylvania Manufacturers,* 134 *N.J.* 96 at 102/103 [102–03], 1993 [629 *A.*2d 885 (1993)]." We have also held that "choice-of-law provisions in liability insurance policies should generally be ignored at least when the insured risk is in this State." *Param Petroleum Corp. v. Commerce and Industry Ins. Co.,* 296 *N.J.Super.* 164, 170, 686 A.2d 377 (App.Div.1997).

[7] As "[t]he initial prong of the governmental-interest analysis entails an inquiry into whether there is an actual conflict between the laws of the respective states," *Gantes v. Kason Corp., supra,* 145 *N.J.* at 484, 679 A.2d 106; *see also Lucker Mfg. v. Home Ins. Co.,* 23 *F.*3d 808, 813 (3d Cir.1994) (no actual conflict between Pennsylvania and Wisconsin law identified), we note that neither party has addressed or identified any conflict in the laws of New Jersey and Pennsylvania regarding legal malpractice.

and the law to be applied is the law that would have governed in the underlying action known as *Mrazik v. Boyson, Inc.*" We also agree with Boyson that since the Mrazik case was a diversity action filed in the United States District Court for the Eastern District of Pennsylvania, " 'the choice of law rules of the forum state [determine] which state's law will be applied,' " to the substantive question of coverage [8] (quoting *Shuder v. McDonald's Corp.*, 859 *F*.2d 266, 269 (3rd Cir.1988)). A federal court sitting in a diversity action applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 *U.S.* 487, 496, 61 *S.Ct.* 1020, 1021–22, 85 *L. Ed.* 1477, 1480–81 (1941); *LeJeune v. Bliss-Salem, Inc.*, 85 *F*.3d 1069, 1071 (3d Cir.1996). Thus, a federal court sitting in Pennsylvania must employ Pennsylvania's choice-of-law principles to resolve conflicts of law issues when a conflict exists. *Melville v. American Home Assur. Co.*, 584 *F*.2d 1306, 1310–13 (3d Cir.1978); *City of Rome v. Glanton*, 958 *F.Supp.* 1026, 1033 (E.D.Pa.1997), *aff'd by order*, 133 *F*.3d 909 (3d Cir.1997).

However, given the issues raised in the Law Division and their disposition, the motion judge never considered the question of whether, under Pennsylvania choice-of-law principles, Pennsylvania or New Jersey law would have governed the enforceability of the policy exclusion in the Mrazik action. *But see, e.g., LeJeune v. Bliss-Salem, Inc., supra*, 85 *F*.3d at 1071–72; *Lucker Mfg. v. Home Ins. Co., supra*, 23 *F*.3d at 813; *City of Rome v. Glanton, supra*, 958 *F.Supp.* at 1033 ("[i]f a true conflict exists, then [the federal district court] must use Pennsylvania's choice of analysis and apply the law of the jurisdiction with the greatest interest in the application of its laws"). Accordingly, we remand for that purpose.

Boyson's principal place of business and manufacturing site is in New Jersey. Hartford insured Boyson in a policy negotiated to exclude product liability. Archer & Greiner contends that the

---

[8] As to the difference as to the substance-procedure distinction in the choice-of-law context, *see Melville v. American Home Assur. Co.*, 584 *F*.2d 1306, 1310–11 (3d Cir.1978).

policy was negotiated and signed in New Jersey and that the premiums for the insurance policy are paid by Boyson from its office in New Jersey. However, Boyson alleges, among other things, that (1) Boyson dealt with Hartford through Buckmun, Van Buren & Fonner, Inc. ("BVF"), an insurance brokerage firm located in Horsham, Pennsylvania; (2) BVF "canvassed the market on [Boyson's] behalf and recommended that ... it place its insurance with Hartford"; (3) "[s]ince both BVF and Hartford are located in Pennsylvania, all negotiations for the contract between Hartford and BVF occurred in Pennsylvania"; (4) the policy "was countersigned in Pennsylvania by Tracy Thompson, [an employee of BVF who was the] authorized agent of Hartford"; and (5) "Boyson received invoices for the policy premiums from BVF and sent its payments to BVF in Horsham, Pennsylvania."

In *Hughes v. Prudential Lines Inc.*, 425 *Pa.Super.* 262, 624 *A.*2d 1063, *app. denied*, 535 *Pa.* 647, 633 *A.*2d 152 (1993), a Pennsylvania appeals court considered whether to apply New York or Pennsylvania law to an action brought by plaintiffs who instituted garnishment proceedings against a marine indemnity insurer in order to execute on a judgment obtained against the bankrupt insured. The judgment was based on an accident at sea, and the issue related to the validity and enforceability of a policy provision which required indemnification only of a claim that was first paid by the insured. *Id.* 624 *A.*2d at 1064. The court held that New York law governed because the case involved interpretation of a policy issued by a New York insurer to a New York insured. *Id.* 624 *A.*2d at 1065–66. Similarly, in *McCabe v. Prudential Property and Cas. Ins. Co.*, 356 *Pa.Super.* 223, 514 *A.*2d 582 (1986), an appellate panel, using Pennsylvania choice-of-law principles, held that Connecticut law governed coverage issues in a case involving a Pennsylvania pedestrian struck in Pennsylvania by an automobile driven by a Connecticut driver insured under a Connecticut policy. An exclusion for injuries to a pedestrian was held to prevent recovery. *Ibid.* The court reasoned that since "Pennsylvania had no contact with the transaction involving the insurance policy ... [i]t was by mere happenstance that the

Connecticut automobile owned and operated by [the driver] was involved in an accident ... in Pennsylvania." *Id.* 514 *A.*2d at 586. The court concluded that there was no coverage because "we are concerned with [a] contract of insurance, and, as to the insurance policy, Connecticut had the most significant contacts."[9] *See also Eastcoast Equipment Co. v. Maryland Cas. Co.*, 207 *Pa.Super.* 383, 218 *A.*2d 91, 95 n. 5 (1966) (Pennsylvania law applicable in a case where a comprehensive general liability policy was contracted for, "issued and delivered in Pennsylvania," even though the accident occurred in New Jersey injured New Jersey plaintiffs and the insured was a New Jersey corporation).

We leave for resolution in the Law Division whether Pennsylvania choice-of-law principles point to Pennsylvania or New Jersey law as controlling the question of coverage in this case. Accordingly, we remand for consideration of that issue and for further proceedings if the exclusion was not enforceable under Pennsylvania choice-of-law principles. No costs.

---

[9] The court, of course, noted that the contents of automobile policies issued in Connecticut are governed by Connecticut statutory law. *Ibid.*