724 A.2d 806 (1999)
318 N.J. Super. 554
Dominic MARINELLI, a minor By and Through his mother and Guardian Ad Litem, Anne Marie MARINELLI and Anne Marie Marinelli, individually, Plaintiffs-Appellants/Cross-Respondents,
v.
K-MART CORPORATION and Ray Clerk, a fictitious unknown employee of K-Mart, Defendants-Respondents,
Kyle Ford, John McDonough and Sean McDonough, j/s/a, Defendants-Respondents/Cross-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1997.
Decided February 23, 1998.
Remanded October 13, 1998.
Resubmitted January 26, 1999.
Decided March 9, 1999.
*807 Vincent J. Ciecka, Pennsauken, for plaintiffs-appellants/cross-respondents (Mr. Ciecka, on the brief).
James D. Butler, Jersey City, for defendant-respondent/cross-appellant Kyle Ford (George Allison, on the brief).
Crawshaw, Mayfield, Turner, O'Mara, Donnelly & McBride, Cherry Hill, for defendant-respondent/cross-appellant John McDonough (Linton W. Turner, Jr., and Tricia E. Habert, on the brief).
Monte, Sachs & Borowsky, Sea Girt, for defendant-respondent K-Mart Corporation (Thomas D. Monte, Jr., on the brief).
Murphy and O'Connor, Haddonfield, for defendant-respondent/cross-appellant Sean McDonough, rely on brief filed on behalf of respondent John McDonough.
Before Judges STERN, KLEINER and KIMMELMAN.
Remanded by the Supreme Court of New Jersey  October 13, 1998.
The opinion of the court was delivered by STERN, P.J.A.D.
This appeal involves the sale of a pellet gun to a minor in Pennsylvania and his transfer of the gun there to a New Jersey minor who shot out the eye of another New Jersey resident in New Jersey. The case is before us, on remand from the Supreme Court, to consider a choice-of-law issue not addressed in our original opinion.

I.
After a jury returned a verdict in favor of plaintiffs, Dominic Marinelli ("plaintiff") and his mother, against all defendants except K-Mart, the trial judge granted plaintiff's motion for a new trial as to "pain & suffering and disability damages" (non-economic damages), but denied their motion for a new trial on all issues. Pursuant to leave granted, plaintiffs appealed from the denial of their motion for a new trial in its entirety and from the denial of their subsequent motion for reconsideration. We also granted defendants, other than K-Mart, leave to cross-appeal from the grant of a new trial as to non-economic damages. They claimed that the verdict should be reinstated. K-Mart contended that the judgment in its favor should be affirmed.
We explained the background in our opinion filed on February 23, 1998:
Plaintiff, Dominic Marinelli, an eleven-year old, was sleeping at the home of his cousin Robert Sean McDonough ("Sean") in Cinnaminson, New Jersey when Sean accidentally shot plaintiff's left eye out with a pellet gun. The gun was bought for Sean by a seventeen-year old friend, defendant Kyle Ford ("Ford"), in Pennsylvania, and *808 brought by Sean to the home of his father John McDonough ("John") in New Jersey. In response to specific interrogatories, the jury found (1) that K-Mart sold the gun to Ford, but that the sale was not "a proximate cause of the accident and injury," (2) that the transfer of the gun by Ford to Sean was a "proximate cause of the accident and in bringing about the injuries to plaintiff," (3) that Sean and John were negligent and that their negligence was "a proximate cause of the accident and injuries," and (4) that Ford was 10% liable, Sean 40% liable, and John 50% liable. Plaintiff was awarded damages in the amount of $206,786.06including economic loss (future wages and medical expenses) in the amount of $127,000, past medical bills amounting to $29,786, and non-economic losses, (including "[p]ain, suffering, disability, impairment, loss of enjoyment of life, inconvenience, mental anguish and emotional distress "), in the amount of $50,000. Plaintiff's mother was awarded $5,000 for her emotional distress. Judgment in favor of K-Mart was entered on January 2, 1996, but on February 2, 1996 the trial judge ordered a new trial on noneconomic damages with respect to the remaining defendants.

(Footnotes omitted.)
After considering the issues raised, we affirmed the denial of plaintiffs' motion for a new trial on liability and the amount of damages awarded to the plaintiff mother for emotional distress. We also affirmed the grant of a new trial on non-economic damages but reversed the denial of a new trial on economic damages.
In our opinion we noted that the trial judge instructed the jury on Pennsylvania law "concerning the sale or transfer of pellet guns to minors" and "informed the jurors that if they found that K-Mart and/or Ford violated the Pennsylvania statute, [that] defendant must be found negligent as a matter of law." We further noted that, at plaintiff's request, the judge instructed the jury "that K-Mart and Ford could be held liable if the negligence of either or both was a `substantial factor' in bringing about plaintiff's injury." Accordingly, we found "no basis on which plaintiff can complain about the charge on negligence and proximate cause" with respect to the Pennsylvania defendants' sale and transfer of the gun to Sean McDonough.
In deciding the choice of law issue presented on the appeal, we also held that New Jersey's comparative negligence law was properly applied, notwithstanding plaintiff's claim that Pennsylvania law controlled. We said:
[A]pplying the appropriate "governmental-interest analysis," Veazey v. Doremus, 103 N.J. 244, 247-48, 510 A.2d 1187 (1986); accord Gantes v. Kason Corp., 145 N.J. 478, 484, 679 A.2d 106 (1996); Butkera v. Hudson River Sloop "Clearwater," Inc., 300 N.J.Super. 550, 553, 693 A.2d 520 (App.Div.1997), New Jersey has the "greatest interest," Veazey, supra, 103 N.J. at 248, 510 A.2d 1187, in having its comparative negligence law apply because the accident occurred here, and the innocent victim lived here. In any event, employing our comparative negligence law does not affect the distinct issues of liability and recovery of damages. Veazey, supra,; Restatement (Second) of Conflict of Laws §§ 145, 171; see also Grossman v. Club Med Sales, Inc., 273 N.J.Super. 42, 51, 640 A.2d 1194 (App.Div.1994); O'Connor v. Busch Gardens, 255 N.J.Super. 545, 547-48, 605 A.2d 773 (App.Div.1992). Moreover, plaintiffs have pointed to no conflict in the law of the two states except for the question of comparative negligence. See Grossman, supra, 273 N.J.Super. at 49, 640 A.2d 1194 ("It is only after a determination is made that there is indeed an actual conflict between the laws ... that the interests of the respective jurisdictions are analyzed"). And given the finding on liability, any error in the charge as to damages and comparative negligence is irrelevant as to K-Mart. Tindal v. Smith, 299 N.J.Super. 123, 138, 690 A.2d 674 (App.Div.), certif. denied, 150 N.J. 28, 695 A.2d 670 (1997); Kaplan v. Haines, 96 N.J.Super. 242, 253-55, 232 A.2d 840 (App. Div.1967), aff'd o.b., 51 N.J. 404, 241 A.2d 235 (1968). (Footnotes omitted.)
However, we added in footnote 8:
Whether plaintiffs can collect the entire judgment from Ford, subject to his ability *809 to obtain contributions from his responsible co-defendants, is an issue not before us and which does not require any new trial or fact-finding.
Following our remand, the trial judge conducted settlement discussions and it became apparent that the issue embodied in footnote 8 of our opinion had to be resolved. Plaintiff now explains:
The Appellate Division issued its opinion on February 23, 1998, and the trial judge, John A. Sweeney, J.S.C., immediately scheduled a retrial which resulted in multiple requests for a postponement. On May 11, 1998, a settlement conference was held before the Honorable John A. Sweeney, J.S.C. At that time, Judge Sweeney and all parties agreed that the issue framed by the Appellate Division in Footnote 8, "Whether plaintiffs can collect the entire judgment from Ford, subject to his ability to obtain contributions from his responsible co-defendants, is an issue not before us and which does not require any new trial or fact-finding", was a novel issue of general public importance and that it would be in the interest of justice to have this issue resolved by the Supreme Court as soon as reasonably possible so as this matter could proceed to a settlement or final judgment. All parties agreed to waive any objections regarding timeliness of the Notice of Petition and Petition for Certification and agreed to request that the Court accept the Certification as within time and/or nunc pro tunc and have pledged to cooperate and file all necessary pleadings forthwith so as to expedite the Court's decision of the within issue which is necessary to bring this matter to a full and final completion.
On October 13, 1998, the Supreme Court granted certification and summarily remanded the matter to us "to consider the choice of law issue raised by the parties and not addressed by the Appellate Division." Marinelli v. K-Mart Corp., 156 N.J. 423, 719 A.2d 1021 (1998). Although plaintiffs (petitioners in the Supreme Court) now state that "the issue regarding whether New Jersey's or Pennsylvania's recovery of damages law should apply was never addressed by the trial court," and (even though a component of comparative negligence) was not raised before us, and hence was not raisedat least expresslyin any proceedings before the petition for certification was filed, we must now answer that question in light of the Supreme Court's remand.

A.
In order to understand the issue, we refer to some of the trial proofs as recited in our original opinion:
On the evening of June 18, 1990, plaintiff, who was eleven years old, stayed overnight at the home of defendants John and sixteen-year old Sean McDonough. Sean, whose parents are divorced and who turned sixteen just fifteen days before the accident, resided in Cinnaminson, New Jersey, with his father, John. Ford was the son of close friends of Sean's former stepfather and "like a big brother" to Sean. Ford was about two years older than Sean and lived near Sean's mother who Sean visited in Pennsylvania. Ford bought the pellet gun for Sean about "[s]ix or seven months prior to the accident."
Sean kept the pellet gun in a closed headboard in his bedroom. He usually placed the gun on the floor while asleep. However, as plaintiff, who was like Sean's "little brother" and would often spend the night with Sean, frequently awoke during the night, Sean placed it on the shelf above his headboard that evening.
After he fell asleep, Sean tossed and turned as a result of a "nightmare about something" and "kept hitting" the gun with his hand. He eventually went to place the gun on the floor, but as he was "raising it over [his] head, [the gun] went off and [plaintiff, who had been asleep,] started screaming."
Sean ran downstairs and informed John that plaintiff was hurt. John quickly went upstairs to the bathroom where plaintiff went, and tried to calm him down. John telephoned plaintiff's mother and informed her of the accident. She arrived at John's house in about ten minutes. She observed that plaintiff's eye was bleeding, and immediately *810 drove him to Zurbrugg Memorial Hospital.
Sean testified that because he knew he was below the legal age to purchase a gun, he asked Ford to buy one for him. Sean gave Ford $50 and told him to "[g]et me what you can."
Ford testified that he went to the K-Mart store in Bensalem, Pennsylvania, and purchased the pellet gun there. Ford, who was born on March 20, 1972, said that he was "about 17" years old at the time of the purchase and that he knew Sean was a minor. Ford estimated that he purchased the gun between six months and one year prior to the accident. Ford testified that he simply went up to the counter in the sporting goods department where pellet guns were sold and purchased one. He had no recollection of what the K-Mart sales clerk looked like or what the person said. Ford claimed that he did not tell the sales clerk that he was eighteen or older and presented no "false identification." Ford was not aware at the time of his purchase that Pennsylvania had a law prohibiting the sale of pellet guns to persons under eighteen years of age.
Ford gave the pellet gun to Sean, together with a container of pellets and a box of cartridges that Ford had also purchased for him, one or two weeks after Sean gave him the $50. The transfer occurred in Pennsylvania. Sean testified that Ford told him at the time of the transfer that he had purchased the gun at K-Mart. However, Ford did not give Sean a receipt, sales ticket or bag which verified that the gun had been purchased at K-Mart.
Sean testified that he had some prior familiarity with firearms. He had accompanied his stepfather to an armory where they engaged in target practice. Sean had used both pellet guns and rifles. Sean's stepfather gave him instructions on how to use firearms and informed him of the danger involved if used incorrectly.
After obtaining the pellet gun from Ford, Sean brought it to his father's home in Cinnaminson without John's knowledge. "A couple of days later," John "came across" the gun in Sean's room in a pillowcase that contained some of Sean's clothes. John estimated that this occurred in January 1990, about six months before the accident, but he admitted that "it was so long ago, I really don't remember." Sean asked John if he could keep the gun and John agreed after making sure the gun had a "safety feature" and being satisfied that Sean "could handle the gun." John explained that he felt Sean was responsible because he was aware that Sean had gained some experience with guns from his stepfather.
John only spoke to Sean on one occasion about safety with regard to the gun. This conversation occurred when John "first discovered the gun." John told Sean to be careful with the gun since it was not a toy and to always keep the safety on when the gun was loaded. He also instructed Sean to keep the gun "in his room" "out of sight" and to never "take it off the property." In addition, John told Sean that no one else could use the gun without supervision. He also instructed Sean to only shoot the gun in the basement, where Sean had set up a target range, and to never aim it at a person or animal. However, John never instructed Sean to "keep the gun unloaded" in the house.
John had Sean demonstrate to him that he knew how to handle the gun and was "almost sure" that Sean showed him that he knew how to operate the safety on the gun. John shot the gun himself one time in the basement while demonstrating to Sean how to operate the gun in a safe manner. John recalled having seen the gun on about three occasions prior to the accident, but was aware that Sean used to shoot the gun in the basement. John admitted that he never went into Sean's room to see where the gun was actually kept. He was unaware that Sean placed the gun on the floor at night or that he stored the gun in a loaded condition. John claimed that he had not "seen the gun in months" and had forgotten that Sean had it until the shooting occurred. However, John did buy a package of cartridges for Sean after Sean had exhausted his initial supply.

*811 As a result of the incident, plaintiff suffered a pellet wound to his left eye. (Foot-note omitted.)[1]
There is no need to detail the facts concerning plaintiff's surgery and loss of his eye or concerning his economic and non-economic damages. The Supreme Court remand does not suggest that any issue we decided should be reconsidered, and the parties have not asked us to do so.

B.
The present issue is quite simple. It flows from the fact Sean and John were covered under a single homeowner's policy with $100,000 liability limits while Ford has primary coverage of $300,000 and excess liability for an additional $2,000,000. The question is whether Ford would be liable for the entire judgment (or anything above the McDonough's $100,000 policy limits) as Pennsylvania law would require, or only the 10% responsibility found by the jury, as New Jersey law requires.
Plaintiffs argue that the law of Pennsylvania governing recovery of damages applies to this case because application of the governmental-interest analysis requires such a result. Since New Jersey is the forum, New Jersey's choice-of-law principles determine which law applies. Gantes v. Kason Corp., 145 N.J. 478, 484, 679 A.2d 106 (1996); Boyson, Inc. v. Archer & Greiner, 308 N.J.Super. 287, 295, 705 A.2d 1252 (App.Div. 1998); Black v. Walker, 295 N.J.Super. 244, 253, 684 A.2d 1011 (App.Div.1996). In tort cases, New Jersey has rejected the traditional rulelex loci delictiin which the choice of applicable law was based on the place where the wrong occurred. Veazey, supra, 103 N.J. at 247, 510 A.2d 1187. Instead, we now follow the more flexible "governmental-interest analysis" in choice of law questions. Id.; Boyson, supra, 308 N.J.Super. at 295, 705 A.2d 1252; Butkera v. Hudson River Sloop "Clearwater", Inc., 300 N.J.Super. 550, 553, 693 A.2d 520 (App.Div.1997). "Under that analysis, the law applied will be that of the state with the greatest interest in governing the particular matter in issue." Gantes, supra, 145 N.J. at 484, 679 A.2d 106; Veazey, supra, 103 N.J. at 248, 510 A.2d 1187; Boyson, supra, 308 N.J.Super. at 296, 705 A.2d 1252. The analysis must be performed separately with respect to each issue in dispute because "the law of one jurisdiction may apply to one issue in a matter and the law of a second jurisdiction to another." Grossman v. Club Med Sales, Inc., 273 N.J.Super. 42, 51, 640 A.2d 1194 (App.Div. 1994); see also Johnson Matthey Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co., 250 N.J.Super. 51, 65, 593 A.2d 367 (App.Div. 1991).
The first step in the governmental-interest analysis is to determine if there is "an actual" conflict between the law of the interested states. Gantes, supra, 145 N.J. at 484, 679 A.2d 106; Veazey, supra, 103 N.J. at 248, 510 A.2d 1187. That is to be determined on an "issue-by-issue basis." Gantes, supra, 145 N.J. at 484, 679 A.2d 106; see also Mueller v. Parke Davis, 252 N.J.Super. 347, 351, 599 A.2d 950 (App.Div.1991).
The comparative negligence statutes of both New Jersey and Pennsylvania preclude recovery by an injured plaintiff only where his or her negligence exceeds the combined negligence of all defendants. N.J.S.A. 2A:15-5.1; 42 Pa. Cons.Stat. Ann. § 7102(a) (1998); Elder v. Orluck, 511 Pa. 402, 515 A.2d 517, 525 (1986). Thus, there is no conflict between this aspect of the comparative negligence law of New Jersey and Pennsylvania.
However, there is a "conflict" between the comparative negligence statutes pertaining to the recovery of damages. 42 Pa. Cons.Stat. Ann. § 7102(b)(1998) provides:
Recovery against joint defendant; contribution.Where recovery is allowed *812 against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.
In comparison, at the time plaintiff's accident occurred and his complaint was filed, N.J.S.A. 2A:15-5.3 provided in pertinent part:
Except as provided in subsection d. of this section, the party so recovering may recover as follows:
a. The full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages.
b. The full amount of economic damages plus the percentage of noneconomic damages directly attributable to that party's negligence from any party determined by the trier of fact to be more than 20% but less than 60% responsible for the total damages.
c. Only that percentage of the damages directly attributable to that party's negligence from any party determined by the trier of fact to be 20% or less responsible for the total damages.
d. With regard to environmental tort actions, the party so recovering may recover the full amount of the damage award from any party determined to be liable.
e. Any party who is compelled to pay more than his percentage share may seek contribution from the other joint tortfeasors.
[(L. 1987, c. 325, § 2, eff. Dec. 18, 1987).][2]
Thus, in Pennsylvania, in a suit where multiple tortfeasors are found liable, any defendant against whom recovery is allowed can be required to pay 100% of the judgment, while under the New Jersey statute in effect at the time the accident occurred and the complaint was filed, a defendant could be required to pay 100% of the judgment only when he or she was 60% or more responsible for the total damages. There is thus a real conflict between the law of the two states on this subject.
When an actual conflict exists, the second step in the governmental-interest analysis is to determine the interest that each state has with respect to the specific issue in dispute. Gantes, supra, 145 N.J. at 485, 679 A.2d 106. That analysis requires an identification of the governmental policies underlying the law of each state and how those policies are affected by each state's contacts with the litigation and the parties. Id.; Veazey, supra, 103 N.J. at 248, 510 A.2d 1187. If a state's contacts are not related to the policies underlying its law, that state does not have an interest in having its law apply. Veazey, supra, 103 N.J. at 248, 510 A.2d 1187. Moreover, it is the qualitative and not the quantitative nature of a state's contact which is decisive in determining whether a state's law should apply. Id.
There are two primary governmental policies and interests recognized in choice-of-law determinations involving torts.
*813 They are a state's interests in assuring full and fair compensation for its injured domiciliaries and the deterrence of tortious misconduct on the part of its domiciliaries. Dent v. Cunningham, 786 F.2d 173, 176 (3d Cir.1986); Mueller, supra, 252 N.J.Super. at 354-55, 599 A.2d 950; Pine v. Eli Lilly & Co., 201 N.J.Super. 186, 192, 492 A.2d 1079 (App.Div.1985). See also O'Connor v. Busch Gardens, 255 N.J.Super. 545, 547-51, 605 A.2d 773 (App.Div.1992). Where both states have an interest in promoting deterrence, the interests of the state with an interest in "both a compensation and a deterrence interest outweigh[s] the interest of the state having only a deterrence objective." Gantes, supra, 145 N.J. at 496-97, 679 A.2d 106. See also Rose v. Port of N.Y. Auth., 61 N.J. 129, 140, 293 A.2d 371 (1972).
In Elder v. Orluck, 334 Pa.Super. 329, 483 A.2d 474, 488-89 (1984), aff'd, 511 Pa. 402, 515 A.2d 517 (1986), the Pennsylvania intermediate appellate court recognized that situations can arise under its Comparative Negligence Act in which a minimally negligent defendant is required to pay the entire award and is unable to secure total contribution because the other tortfeasors are insolvent or have minimal insurance coverage. However, the court observed that either the plaintiff or the "solvent defendant must suffer" when one or more tortfeasors are insolvent, and "the loss has traditionally fallen on the wrongdoer." Id. at 488.
Although Pennsylvania has a strong interest in the compensation of its own domiciliaries, it has no interest in compensating non-domiciliaries, such as the plaintiffs, who reside in New Jersey. Schum v. Bailey, 578 F.2d 493, 496-97 (3d Cir.1978); Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 33 (3d Cir.1975); Deemer v. Silk City Textile Mach. Co., 193 N.J.Super. 643, 649, 475 A.2d 648 (App.Div.1984). Thus, the fact that Pennsylvania law might afford plaintiffs a greater recovery than the law of New Jersey is "irrelevant" in resolving the choice of law issue before us. Fu v. Fu, 309 N.J.Super. 435, 441, 707 A.2d 473 (App.Div.), appeal granted, 155 N.J. 585, 715 A.2d 988 (1998); Haggerty v. Cedeno, 279 N.J.Super. 607, 612, 653 A.2d 1166 (App.Div.), certif. denied, 141 N.J. 98, 660 A.2d 1197 (1995). "It would indeed be anomalous to apply foreign law solely to gain access to a deep pocket when local law denies that access." Haggerty, supra, 279 N.J.Super. at 612, 653 A.2d 1166. Pennsylvania simply does not have an interest in making its resident, Ford, who was found only 10% responsible, liable for the entire award for the accident which occurred in New Jersey, thereby injuring a resident of this state.
Accordingly, we hold that New Jersey has a greater interest in guarding against injury here and in protecting its innocent victims. We further hold that the New Jersey law of damages, even though it gives less protection to its resident in these circumstances, is to be applied.
Plaintiff argues, however:
important in the determination of which recovery of damages law applies is to consider what substantive law the court applied in determining choice-of-law as to liability. Busik v. Levine, 63 N.J. 351, 307 A.2d 571 (1973). In the present matter, both the trial judge and the appellate division concluded that Pennsylvania substantive law applied as to all issues of liability. In short, during the trial phase, the sale of the gun to a minor constituted negligence per se (18 Pa.C.S. 6304) rather than just evidence of negligence (New Jersey law). The Third Circuit Court of Appeals has recognized that "New Jersey [courts] would apply the damages law of the state whose substantive law is applied." Draper v. Airco, Inc., 580 F.2d 91, 98 (3rd Cir.1978) (emphasis added). With Pennsylvania's substantive law applying, it follows that it should be Pennsylvania's damages law which should also be applied.
We disagree.
In Draper, the Third Circuit recognized that in Busik v. Levine:
the Supreme Court of New Jersey determined that, by the majority view, damages generally and prejudgment interest specifically are a matter of substance insofar as conflict of laws principles are concerned. The court gave no indication that New Jersey's law was otherwise and, indeed, implied that New Jersey would follow this *814 rule. We have found no subsequent cases that indicate a change of view.
....
Since ... Busik is a relatively clear indication of New Jersey law directly from the New Jersey Supreme Court, we believe that New Jersey would apply the damages law of the state whose substantive law is applied.
[Draper v. Airco, Inc., 580 F.2d 91, 98 (3d Cir.1978) (footnote omitted.) ]
See Busik v. Levine, 63 N.J. 351, 368-70, 307 A.2d 571 (Weintraub, C.J., joined by Jacobs and Proctor, JJ.), appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L. Ed.2d 733 (1973). See also W.A. Wright, Inc. v. KDI Sylvan Pools, Inc., 569 F.Supp. 589, 593-94 (D.N.J.1983) (awarding prejudgment interest), modified on other grounds, 746 F.2d 215 (3d Cir.1984); A-S Development, Inc. v. W.R. Grace Land Corp., 537 F.Supp. 549, 556 n. 6 (D.N.J.1982), aff'd, 707 F.2d 1388 (3d Cir.1983), and 707 F.2d 1398 (3d Cir.1983). But see Pollock v. Barrickman, 610 F.Supp. 878, 879-81 (D.N.J.1985) (applying New Jersey law of negligence and Pennsylvania law of damages in diversity action employing New Jersey choice of law principles).
The Busik plurality written by Chief Justice Weintraub follows the majority rule that "in the context of conflict of laws, ... `damages' go to the substance," Busik, supra, 63 N.J. at 368, 307 A.2d 571, and thus the State whose substantive law controls also governs the question of damages. See also Restatement (Second) Conflict of Laws §§ 145, 164, 171. We, therefore, hold that New Jersey law controls the issue of contribution. This flows from our holding on the original appeal that the New Jersey law of comparative negligence governs this matter and that the "governmental interest" test points to New Jersey substantive law except with respect to the instructions regarding K-Mart's liability for its sale of the pellet gun to Ford and his subsequent transfer of the weapon to Sean in Pennsylvania.
Accordingly, plaintiffs cannot collect the entire judgment (whatever it turns out to be after the retrial on damages) from Ford who was found to be only 10% responsible. Under New Jersey law plaintiffs may recover only 10% of the award from Ford. We find no basis for applying the law of contribution of different states to different defendants, and the parties do not suggest otherwise in contending that either Pennsylvania or New Jersey law controls. Thus, we cannot conclude that Ford can be jointly and severally liable because he is a Pennsylvania resident whose conduct occurred in Pennsylvania, while the McDonoughs are responsible only for their own percentage of responsibility because they live here and the accident occurred in this state. Rather, comparative negligence having been determined under New Jersey law, N.J.S.A. 2A:-15-5.3 shall control the recovery of damages to be awarded at the retrial.

C.
We adhere to our original opinion as supplemented herein, and remand for further proceedings consistent with this opinion.
NOTES
[1] We also noted that

Sean testified during his deposition that Ford was eighteen at the time of the purchase. The judge instructed the jury that this deposition testimony could be used against Sean, but not K-Mart or Ford. Ford testified during his initial deposition that he was "probably 16 or 17" at the time of the purchase. However, in a later deposition, Ford stated: "I think I was 17 or 18. I'm not sure how old I was." The judge instructed the jury that the first deposition could be used against Ford, but not K-Mart.
[2] N.J.S.A. 2A:15-5.3 was amended by L. 1995, c. 140, § 2. The amendment deleted subsection b and changed the wording in subsection c which now states: "Only that percentage of the damages directly attributable to that party's negligence or fault from any party determined by the trier of fact to be less than 60% responsible for the total damages." The amendment also altered the language of subsection d concerning environmental tort actions. The amendment applies to causes of action filed on or after June 29, 1995. See L. 1995, c. 140, § 3. Where there are multiple causes of injury, New Jersey generally permits apportionment "[w]here a factual basis can be found for some rough practical apportionment, which limits a defendant's liability to that part of the harm of which that defendant's conduct has been a cause in fact...." "Where no such basis can be found, the courts generally hold the defendant for the entire loss, notwithstanding the fact that other causes have contributed to it." Dafler v. Raymark Industries, Inc., 259 N.J.Super. 17, 28, 611 A.2d 136 (App.Div. 1992), aff'd o.b., 132 N.J. 96, 622 A.2d 1305 (1993) (quoting Prosser and Keeton, Law of Torts, § 52, at 345 (5th ed.1984)). The burden of showing an ability to apportion the damages is on the party seeking it. Id. at 33, 611 A.2d 136.